**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0271n.06
Filed: May 16, 2008

**07-3804**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TOUMANY SAYON SAKO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| OHIO DEPARTMENT OF | ) | SOUTHERN DISTRICT OF OHIO |
| ADMINISTRATIVE SERVICES, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: DAUGHTREY, GILMAN, and ROGERS, Circuit Judges.

PER CURIAM. The plaintiff, Toumany Sako, appeals the district court's order granting summary judgment to the defendant, the Ohio Department of Administrative Services (ODAS), on Sako's Title VII claim. The district court based its decision on Sako's explicit waiver of this claim in a settlement agreement between the two parties. Sako contends that his waiver is invalid because (1) it was not supported by adequate consideration and (2) he did not make the waiver knowingly and voluntarily. The district court found no merit to either claim – correctly, we conclude. We therefore affirm the district court's judgment.

Sako had been employed by ODAS as a security officer for over four years at the time of his termination. It resulted from a confrontation between Sako and his immediate

supervisor, Troy Ogle, concerning Sako's participation in a "world languages celebration" presented by the Ohio Department of Education, to which Sako was invited because he is originally from Africa and speaks several languages. According to ODAS officials, a "miscommunication" about Sako's permission to take time off from work for this project led to a reprimand for not properly coordinating his participation. The supervisor reported that Sako became insubordinate during the disciplinary process, and Sako was eventually terminated as a result. Sako disputed ODAS's version of events, maintaining that the discipline and eventual termination were part of a continuing pattern of harassment by his supervisors.

After his termination, Sako filed a grievance with his union, the Ohio Civil Service Employees Association (OCSEA), as well as discrimination claims with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission and a claim for unemployment benefits. The union negotiated a settlement of Sako's grievance, leading to the signing of a "grievance settlement agreement." The agreement reads in relevant part:

> This agreement is made November 23, 2005 by and between the Department of Administrative Services (DAS); the Ohio Civil Service Employees Association, Local 11, AFSCME (OCSEA), and Toumany Sako (Employee), parties hereto.
>
> WHEREAS, there is now pending a grievance filed by the above named employee and OCSEA against DAS pursuant to the Collective Bargaining Agreement. . . ;
>
> WHEREAS, DAS denies any liability in connection with the alleged claim;

WHEREAS, all parties hereto wish to reach a full and final settlement of all matters and causes of action arising out of the claim set forth above;

Now, therefore, all parties hereto, in consideration of their mutual covenants and agreements to be performed, as hereinafter set forth, agree as follows:

1. This document will serve as the Employee's resignation. The resignation will be coded as SO1 with effective date 6/22/05. EHOC will indicate "REMOVAL CHNGD TO RESIGNATION PER GRIEV STLMT EFF 6/22/05."

2. The Employee will be paid a lump sum of $6,500.00. The Employee will be responsible for all applicable deductions.

3. This document will serve to withdraw [the] grievance. . . .

4. The Employee will withdraw the following pending actions:

   OCRC discrimination claim (COL) 71062205 (32115) 063005; EEOC 22A A5 03419; any other allegations that may be pending.

   Unemployment Determination ID # 212217618-1, and take no further action to seek unemployment benefits.

OCSEA agrees to waive any and all rights it may currently or subsequently possess to obtain any reparation, restitution or redress for its members as a result of the events which formed the basis of the aforementioned grievance, including the right to have the grievance resolved through arbitration, or through resort to administrative appeal or through the institution of legal action.

OCSEA agrees to withdraw the aforementioned grievance and to waive its rights to pursue any and all claims that may arise as a result of the implementation of the terms of the Agreement.

Directly after this language appear four signature lines, two for Department representatives and two for union representatives, followed by this provision:

(This settlement is valid without the Employee's signature. The Employee's signature is only needed to obtain waiver of individual rights.)

Employee agrees:

To waive any and all rights they [sic] may currently or subsequently possess to receive any reparation, restitution or redress for the events which formed the basis of the aforementioned grievance, including the right to resort to administrative appeal or through the institution of legal action. Employee specifically agrees to withdraw the following actions which are currently pending:

OCRC discrimination claim (COL) 71062205 (32115) 063005; EEOC 22A A5 03419; any other allegations that may be pending.

Unemployment Discrimination claim ID # 212217618-1, and take no further action to seek unemployment benefits.

I have read the above paragraph and I am making a KNOWING and VOLUNTARY Waiver of my rights as set forth above.

There is then a signature line for Sako. All parties signed and dated the agreement.

Despite the terms of the agreement, Sako did not withdraw his EEOC claim and, after receiving a right-to-sue letter, filed the instant action against ODAS, alleging national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq.* The defendant moved for summary judgment on the basis of the settlement agreement, and Sako opposed it, arguing (1) that the agreement was not supported by adequate consideration and (2) that his waiver in the agreement was not knowing and voluntary. The magistrate judge to whom the case was referred by consent of the parties granted summary judgment to the defendant.

Although Sako argued below that the consideration for his waiver was inadequate based on his calculation that the monetary value of unemployment compensation

payments was greater than the $6,500 lump sum that he was awarded under the settlement agreement, he makes an entirely different argument on appeal, contending that there was no consideration at all.

The validity of waivers of federal causes of action is governed by federal law, and we "examine waivers of employee rights under normal contract principles." *Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir. 1989). Therefore, "[p]roperly executed waivers of possible employment-related discrimination claims knowingly and voluntarily made between an employee and his employer will be enforced absent the typical exceptions," including "lack of consideration." *Id.* Consideration is "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee." Black's Law Dictionary (8th ed. 2004); *see also* Restatement (Second) of Contracts §71 (1981).

In his brief before this court, Sako argues that the provision in the first part of the agreement making his signature unnecessary to its validity establishes that the benefits bestowed on him by the agreement – the $6,500 payment and the change in his file from terminated to resigned – were conferred without his waiver and, therefore, that there was no additional consideration supporting the waiver in the second part of the agreement that bore his signature. In other words, he contends there needed to be some additional consideration in exchange for his waiver to make that part of the agreement valid.

As noted above, the magistrate judge did not rule on this interpretation of the settlement agreement because the argument was not raised in the district court. We suspect that if it had been raised, the magistrate judge would have found it as unpersuasive as we do on appeal. At oral argument in this court, counsel for Sako conceded that his client had received the consideration listed in the agreement: $6,500 and a notation in his file that he had left employment at ODAS voluntarily. Counsel also conceded that his client was present when the document was executed and signed it at the same time the union and department representatives did so. Finally, he conceded that a claim for unemployment compensation could not be approved if his client was terminated for cause and that the department could have resisted a claim for such payments on that basis. He nevertheless insisted that there was no consideration for the plaintiff's waiver of his right to file an action under Title VII.

As we have observed in another case involving an employee's release of liability on the part of an employer who had allegedly violated a federal employment discrimination statute:

> This is a case of contract construction. The scope of a release, like any contract, depends on ascertaining the intent of the parties at the time of signing the release. The dispositive inquiry is "what did the parties intend?" Intent is determined by reviewing the language of the *entire* instrument and all surrounding facts and circumstances under which the parties acted in light of the applicable law as to employment discrimination at the time.

*Adams v. Philip Morris, Inc.*, 67 F.3d 580, 585 (6th Cir. 1995) (emphasis added). In this case, the intent of the parties could not be clearer from a review of the settlement agreement *in its entirety*, despite the obvious awkwardness in wording and arrangement of the provisions in the union's grievance settlement form. As we read the agreement, there simply is no ambiguity. In exchange for waiving his right to bring suit under Title VII, Sako accepted a lump sum settlement and the elimination of any negative implication concerning the end of his tenure at ODAS, and the union withdrew its grievance on Sako's behalf. There can be no question that the plaintiff received compensation for the release of any liability on the part of his employer.

Nor do we find any basis for holding that the release was not knowingly and voluntarily executed. As with the issue of consideration, we "appl[y] ordinary contract principles in determining whether such a waiver is [voluntary], remaining alert to ensure that employers do not defeat the policies of . . . Title VII by taking advantage of their superior bargaining position or by overreaching." *Id.* at 583. Factors to be considered include:

> (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

*Id.* In this case, the plaintiff focuses his argument on the first two of these factors, claiming that his background as a French-speaking African immigrant with only a high school

education, the limited amount of time that he was given to sign the agreement (amounting to only a matter of minutes) and the fact that he was not represented by counsel all militate in favor of a finding that his endorsement of the agreement was not knowing and voluntary. The district court found, however, that Sako had immigrated to the United States more than 10 years prior to the execution of the agreement, that he had then enrolled in English classes at Howard University and that, because the document was brief and "could easily be read and understood," there was no basis on which to find that his waiver was unknowing. The court also pointed out that although Sako was not represented by counsel, he had been assisted throughout by union officials, who had filed a formal grievance on his behalf and who were present at the time that the agreement was signed. The court also noted that despite Sako's claim that he was given only a few minutes to decide whether or not to sign the waiver, there was no indication that he had requested more time to consider the situation or that he was pressured into signing the agreement. In sum, the district court concluded, "Mr. Sako was aware of the waiver's legal consequences and ramifications," from which the court further concluded that "the release was knowingly and voluntarily executed by Mr. Sako." Nothing that the plaintiff has produced on appeal refutes the district court's conclusions in this regard.

For the reasons set out above, we AFFIRM the judgment of the district court.