**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0382n.06

No. 13-5747

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
May 22, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| Rebecca Shupe, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellant, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| v. | ) | KENTUCKY |
| | ) | |
| Asplundh Tree Expert Company, | ) | |
| | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

BEFORE: CLAY and DONALD, Circuit Judges; MAYS, District Judge.[*]

**Samuel H. Mays, District Judge.** Plaintiff-Appellant Rebecca Shupe ("Shupe") appeals the district court's order granting summary judgment to her former employer, Defendant-Appellee Asplundh Tree Expert Company ("Asplundh") in her suit for sexual harassment, gender discrimination, and wrongful termination. For the reasons below, we **AFFIRM** the judgment of the district court.

**I.**

Asplundh hired Shupe to work as a Permission Taker/Pre-Planner in its Lexington, Kentucky offices in August 2008. As a

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

condition to her at-will employment, Shupe was a required to sign several forms, including a "Limitation on Time to File Claims or Lawsuits" (the "Waiver"). Shupe signed and dated the Waiver on August 15, 2008.

The single-page Waiver provides that:

> I agree that any claim, administrative claim or lawsuit relating to my service with [Asplundh] or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit, except as may be provided otherwise in a collective bargaining agreement currently in effect. I waive any statute of limitations to the contrary.
>
> I have read and understand the contents of this limitation and am fully able and competent to complete it.

The words "IMPORTANT NOTICE" in larger font appear at the top and bottom of the Waiver. The words "LIMITATION ON TIME TO FILE CLAIMS OR LAWSUITS" and "READ CAREFULLY BEFORE SIGNING" also appear at the top of the Waiver. The words "PLEASE READ" in larger font appear at the bottom of the Waiver.

Shupe continued to work for Asplundh until she was terminated in August 2011. Shupe claims that she was wrongfully terminated in retaliation for complaining of sexual harassment and gender discrimination by her supervisor at Asplundh, who was also her ex-husband.

Shupe filed a complaint against Asplundh in the Circuit Court of Fayette County, Kentucky, on August 10, 2012. The

complaint was filed more than six months after she had been terminated. Shupe alleged that Asplundh had violated the Kentucky Civil Rights Act, K.R.S. §§ 344.010, *et seq.*, when she was (1) subjected to sexual harassment by her supervisor, her former husband; (2) terminated based on her gender and age; and (3) terminated in retaliation for complaining about her former husband's actions.

When Asplundh removed the action to the United States District Court for the Eastern District of Kentucky, Shupe filed a motion to remand the case to the state court on the basis that her claims did not meet the minimum amount in controversy for diversity jurisdiction. The district court disagreed and denied her motion to remand.

Asplundh then filed a motion for summary judgment, arguing that Shupe's complaint, filed almost a year after her termination, was barred by the six-month limitations period in the Waiver she had signed as a condition of her employment.

The district court granted the motion and Shupe filed this timely appeal. On appeal, Shupe argues (1) that the district court lacked subject matter jurisdiction because her claims did not meet the minimum amount in controversy requirement for diversity jurisdiction, and (2) that her waiver concerning the six-month limitations period was invalid and unenforceable.

**II.**

Under 28 U.S.C. § 1291, this Court has "jurisdiction of appeals from all final decisions of the district courts of the United States." Because the district court's grant of summary judgment for Asplundh disposed of all issues relevant to this appeal, this Court has jurisdiction.

### A. Diversity Jurisdiction and the Minimum Amount-In-Controversy Requirement

The denial of a motion to remand for lack of subject matter jurisdiction is reviewed *de novo*. *Music v. Arrowood Indem. Co.*, 632 F.3d 284, 286 (6th Cir. 2011) (internal citation omitted). "If removal of a civil action is sought on the basis of the jurisdiction conferred by [28 U.S.C. § 1332(a)], the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy . . . ." 28 U.S.C. § 1446(c)(2). A court must conduct a "fair reading" of the allegations in the complaint to determine the amount in controversy. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001).

"[T]he notice of removal may assert the amount in controversy if the initial pleading seeks . . . (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded . . . ." 28 U.S.C. § 1446(c)(2)(A)(ii).

Kentucky has such a practice. Kentucky Rule of Civil Procedure 8.01(2) states that, "In any action for unliquidated damages the prayer for damages in any pleading shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish the jurisdiction of the court . . . ."

A removal action is only proper based on the amount in controversy asserted in the removal notice "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in [28 U.S.C. § 1332(a)]." 28 U.S.C. § 1446(c)(2)(B). This Court has held that federal jurisdiction in a diversity case is determined at the time of removal. *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996) (internal citations omitted). "The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006) (internal citations omitted). "The party requesting removal must set forth, in the notice of removal, specific facts supporting the assertion that the amount in controversy exceeds the amount required by statute." *Nat'l Nail Corp. v. Moore*, 139 F.Supp.2d 848, 850 (W.D. Mich. 2001) (citing *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995)). "[B]ecause lack of jurisdiction would make any decree in the case void and the

continuation of litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman*, 438 F.3d at 549-50 (alteration in original) (internal citations omitted).

A successful claim under the Kentucky Civil Rights Act entitles a plaintiff to "actual damages." K.R.S. § 344.450. "Actual damage is most appropriately defined as all those damages directly and naturally resulting, in the ordinary course of events, from the injury in question." *Mitchell v. Seaboard Sys. R.R.*, 883 F.2d 451, 453 (6th Cir. 1989) (internal citation omitted). Actual damages include broader relief than Title VII. Id. at 454 (internal citation omitted). Actual damages include back pay, front pay, lost benefits, humiliation, emotional distress, embarrassment, and attorney's fees. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007); *Mitchell*, 883 F.2d at 452-53; *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 817 (Ky. 1992) (internal citation omitted).

It is appropriate to consider back pay beyond the time of removal when a plaintiff seeks an award for back pay that includes future accruals. *Weaver v. A.T.&T. Corp.*, 2010 WL 2521462, at *2 (W.D. Ky. June 18, 2010) (citing *Gafford v. Gen. Elec.*, 997 F.2d 150, 160-61 (6th Cir. 1993)). There is no statutory limit on damages for "emotional distress" under the

Kentucky Civil Rights Act. *Childers Oil Co., Inc. v. Adkins*, 256 S.W.3d 19, 28 (Ky. 2008).

Claims for punitive damages should be included in the amount-in-controversy, "unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (internal citation omitted). Punitive damages are not available under the Kentucky Civil Rights Act. *Kentucky Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 139-40 (Ky. 2003).

Punitive damages are available against a defendant who acted grossly negligently toward a plaintiff. *Kinney v. Butcher*, 131 S.W.3d 357, 358-59 (Ky. Ct. App. 2004). "[T]he prevailing understanding defines gross negligence as a 'wanton or reckless disregard for the safety of other persons.'" *Id.* "It is not necessary that the jury find the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation." *Id.* Punitive damages must be proven by clear and convincing evidence under Kentucky law. K.R.S. § 411.184(2).

**B. The District Court Properly Determined that Plaintiff's Claims Exceeded $75,000.00.**

In compliance with Kentucky Rule of Civil Procedure 8.01(2), Shupe's complaint does not state an amount in

controversy. She alleges that her damages exceed the minimum amount necessary to confer jurisdiction on the Fayette County Circuit Court. The minimum amount necessary to confer jurisdiction in Fayette County is $5,000.00.

Shupe's complaint alleges that she suffered damages for "embarrassment, physical pain and suffering, and emotional distress, requiring [her] to incur medical treatment and expenses for same" as a result of Asplundh's failure to stop the sexual harassment to which she was subjected. The complaint alleges that Shupe is entitled to damages for "loss of wages and employment benefits, and that she continues and will continue to suffer said damages . . ." due to her wrongful termination.

Shupe alleges that Asplundh "falsely accus[ed] her of knowing of the wrongful conduct of Defendant's supervisor concerning Defendant's property." That conduct was allegedly "grossly negligent, outrageous, extreme, intentional, [and] designed to hold her in false light to others within the company and done with such reckless disregard to the Plaintiff, entitling her to [p]unitive damages." Shupe alleges that she is entitled to attorney's fees.

Defendant-Appellee's Notice of Removal states the following specific facts about the amount in controversy. Shupe was laid off in August 2011. She was working approximately 42.5 hours a week when she was terminated. Her pay rate was $15.00 an hour.

Shupe could have earned approximately $34,123.00 if she had remained employed from August 2011, to September 10, 2012, when the action was removed.

Asplundh alleges that trial would not occur until September 2013. Shupe would then be seeking more than two years of back pay. Two years of unmitigated back pay would be approximately $68,250.00. Asplundh alleges that this figure and "Plaintiff's request for punitive damages, damages for 'actual damages' of emotional distress, humiliation, or embarrassment" and attorney's fees total more than $75,000.00.

The district court agreed with Asplundh's damages calculation and found by a preponderance of the evidence that Shupe's claim for damages exceeded $75,000.00. The calculation of Shupe's backpay appropriately included accruals through the projected trial date, because she alleged that "she continues and will continue to suffer" damage from her loss of wages. *See Weaver*, 2010 WL 2521462, at *2 (citing *Gafford*, 997 F.2d at 160-61) ("[Plaintiff] seeks back pay 'for wages and other monetary damages incurred and to be incurred in the future.' . . . Thus, because at the time of removal [Plaintiff] sought an award for back pay that included future accruals, it is appropriate to consider back pay beyond the time of removal.") Shupe's damages for humiliation, embarrassment, and attorney's fees would be in addition to that amount.

Shupe alleges that she is entitled to punitive damages for Asplundh's grossly negligent conduct. Although she is not entitled to punitive damages under the Kentucky Civil Rights Act, a fair reading of Shupe's complaint demonstrates that she brings additional claims for gross negligence. Shupe alleges that Asplundh's conduct was outrageous and extreme. If Shupe presented evidence of that conduct, she could show that Asplundh was grossly negligent. A plaintiff must prove punitive damages by clear and convincing evidence. K.R.S. § 411.184(2). That standard does not amount to a legal certainty.

Evaluating Shupe's request for damages, it is more likely than not that the amount in controversy is at least $75,000.00. The district court did not err in its calculation of the amount in controversy.

### C. Neither the Pre-Suit Demand Letter nor the Subsequent Affidavit Changes Our Analysis

Shupe relies on her pre-suit settlement demand letter to show that she does not seek more than $75,000.00 in damages. The letter states that "Ms. Shupe will waive all claims and causes of actions arising out of this wrongful termination matter against Asplundh Company, in exchange for the Company paying Ms. Shupe her salary through August 31, 2012, back-dated to her date of termination, commencing immediately." The letter states that Shupe will "need to be reimbursed for the value of

the company's medical, dental, and other insurance benefits she did not receive." Alternatively, "Ms. Shupe will consider taking a lump sum cash payment in the sum of $60,000.00 . . . ."

"It is settled that, in ascertaining the amount in controversy for jurisdictional purposes, where the law gives the rule, the legal causes of action, and not the plaintiff's demand, must be regarded." *Smith v. Phillips & Jordan, Inc.*, 2011 WL 250435, at *2 (E.D. Ky. January 24, 2011) (internal quotations and citations omitted). "[A] settlement demand letter is 'some evidence' regarding the amount in controversy." *Id.* (emphasis in original) (internal citation omitted) "[T]he fact that Plaintiff attempted to settle the claim for less than the amount in controversy is not probative of the true amount because litigants often settle claims for less than the amount in controversy." *Hollon v. Consumer Plumbing Recovery Ctr.*, 417 F.Supp.2d 849, 854 (E.D. Ky. 2006) (internal citations omitted). "[A]n offer falling just below the jurisdictional threshold tends to suggest that the amount in controversy exceeds this threshold, especially since parties 'routinely offer and accept settlement amounts significantly below the total amount placed into controversy . . . .'" *Osborne v. Pinsonneault*, 2007 WL 710131, at *2 (W.D. Ky. March 2, 2007) (quoting *Sayre v. Potts*, 32 F.Supp.2d 881, 888 (S.D.W. Va. 1999).

Shupe's settlement demand letter requested a lump sum of $60,000.00 to cover her lost pay and benefits. That falls below the federal jurisdictional limit of $75,000.00. It does not take into account the request in her complaint for damages for embarrassment, humiliation, or emotional distress, or for punitive damages or attorney's fees. Shupe's settlement demand letter is not inconsistent with the district court's finding that her claims meet the federal amount-in-controversy requirement.

Shupe also relies on her post-suit affidavit to limit the amount of damages she seeks. Shupe states that, "I have never believed or been led to believe that I could recover or receive more than $75,000 . . . by asserting this lawsuit." She also states that, "I have never demanded, claimed, requested or otherwise indicated in any way to any person that I seek or desire more than $75,000 . . . to settle or compromise this lawsuit." Finally, Shupe states that, "I have never sought more than $75,000 . . . for any and all claims which could be, or have been raised in this lawsuit."

"[A] post-removal stipulation [or affidavit] reducing the amount in controversy to below the jurisdictional limit does not require remand to the state court." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000). A plaintiff may stipulate to a claim less than the federal jurisdictional amount

"where a plaintiff provides specific information about the amount in controversy for the first time . . . ." *Egan v. Premier Scales & Sys.*, 237 F.Supp.2d 774, 778 (W.D. Ky. 2002). That is a clarification rather than a reduction of the amount in controversy. *Id.* at 778. "[O]nly unequivocal statement[s] and stipulation[s] limiting damages will serve this purpose." *Id.* An actual limitation on the amount of a potential judgment "is essential to any such stipulation." *Id.* "To merely say that one will not accept money in excess of a certain amount limits neither the judgment nor the demand." *Id.*

The district court in *Egan* found that the statement that the plaintiff "will accept a sum of $74,999 exclusive of interest and costs as a judgment regardless of what any court finds in excess of that amount" was not an unequivocal stipulation. *Id.* at 775, 778. The same district court found that the statement that the plaintiff "hereby certifies to the Court that he will not be making a claim nor pursuing damages in amount equal to or exceeding the sum of $75,000.00" was an unequivocal stipulation limiting damages. *Van Etten v. Boston Scientific Corp.*, 2009 WL 3485909, at *1 (W.D. Ky. Oct. 23, 2009). That district court did find that the statement that the plaintiff "will not seek *or accept* an award of damages in excess of $74,999.00 inclusive of punitive damages, attorney's fees, and the fair value of any injunctive relief" was an unequivocal

- 13 -

stipulation limiting damages. *Spence v. Centerplate*, 931 F.Supp.2d 779, 780, 782 (W.D. Ky. 2013) (emphasis in original).

Counsel for Shupe argued that there was no guidance about the words a post-suit limitation on damages should contain when Shupe filed her affidavit. That argument is not well taken. Both *Egan* and *Van Etten* were decided before Shupe filed her complaint in Kentucky court. None of the statements in Shupe's post-suit affidavit is an unequivocal limitation on damages. None of her statements is an actual limit on the potential judgment she would receive. All of Shupe's statements are backward looking. She does not mention the potential judgment in her case at all. Her post-suit affidavit is not an unequivocal statement limiting her damages to an amount below the jurisdictional limit. The district court did not err in denying Shupe's motion for remand.

**III.**

We now turn to the merits of the district court's summary judgment order. The granting of a motion for summary judgment is reviewed *de novo*. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006).

Waivers of statutes of limitations are valid and enforceable under Kentucky law. *Dunn v. Gordon Food Servs., Inc.*, 780 F.Supp.2d 570, 573 (W.D. Ky. 2011) (citing *Edmondson v. Pa. Nat. Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 755-56 (Ky.

1989)). "[T]his Court determined that there is nothing inherently unreasonable about a six-month limitations period contained in an employment agreement." *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357 (6th Cir. 2004) (internal quotations and citation omitted). Kentucky's highest court has held that a six-month limitations period is reasonable. *Ashland Fin. Co. v. Hartford Acc. & Indem. Co.*, 474 S.W.2d 364, 366 (Ky. 1971) (internal citation omitted). Shupe does not dispute the enforceability of a statute-of-limitations waiver. She admits that she signed the Waiver at issue. Shupe argues that her acceptance of the Waiver was not "knowing and voluntary."

"In evaluating whether a [waiver] has been knowingly and voluntarily executed, we look to (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (internal quotations and citation omitted).

The record contains no evidence about Shupe's education or experience. Courts have upheld statute-of-limitations waivers when the plaintiff had only a high school education. *Sako v.*

*Ohio Dept. of Admin. Servs.*, 278 F. App'x 514, 518 (6th Cir. 2008); *Dunn*, 780 F.Supp.2d at 577 (internal citations omitted). Without more, this factor is neutral.

Shupe has stated that she "was presented several documents and directed to sign them, which were not explained to me nor did I understand what or why I was signing said documents other than I was told I had to sign said documents in order to obtain employment with the Defendant." (Shupe Aff. ¶ 2.) Shupe stated that, "I was not allowed an opportunity to have [the Waiver] or other documents I was forced to sign in order to obtain employ[ment] reviewed by an attorney of my choosing." (*Id.* ¶ 3.) Shupe stated that, "I was never provided a copy of the Waiver or any other document I was required to sign . . . ." (*Id.* ¶ 4.)

There is no evidence that Shupe asked for more time to complete the Waiver or to speak to an attorney. There is no evidence that Shupe indicated she did not understand the terms of the Waiver when she signed it. There is no evidence that Shupe asked for a copy of the Waiver after she signed it. There is no evidence of fraud when Shupe signed the Waiver.

"In general, a person who has the opportunity to read a contract, but does not do so and signs the agreement, is bound to the contract terms unless there was some fraud in the process of obtaining his signature." *Aytes v. Federal Exp. Corp.*, 2012

WL 1831272, at *13 (E.D. Ky. May 18, 2012) (citing *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764, 766 (Ky. 1985)). This Court has held that a plaintiff "had an obligation to seek assistance before she signed if she felt she did not understand the application." *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 461 (6th Cir. 1986). This Court has upheld a statute-of-limitations waiver when "[t]he [district] court also noted that despite [the plaintiff's] claim that he was given only a few minutes to decide whether or not to sign the waiver, there was no indication that he had requested more time to consider the situation or that he was pressured into signing the agreement." *Sako*, 278 F. App'x at 519. "Even assuming the verification of [the plaintiff's] . . . inability to consult an attorney, standing alone these facts do not show lack of knowledge [or] voluntariness." *Dunn*, 780 F.Supp.2d at 577. In the absence of any evidence that Shupe requested more time to review the Waiver, indicated she did not understand the Waiver, or asked for time to have an attorney review the Waiver, this factor weighs in favor of Shupe's having knowingly and voluntarily executed the Waiver.

The district court found that "[t]he waiver is quite clear, both in content and in form. The font directing the reader's attention is bold and capitalized, and the font containing the actual language of the waiver is clear from a normal reading

distance. The language itself is relatively plain and clear." (Order on Mot. Summ. Judg. at 4, ECF No. 16.) Shupe does not dispute that the font is appropriate and that the language is clear and unambiguous.

The Eastern District of Kentucky has upheld a waiver that stated: "To the extent the law allows an employee to bring legal action against Federal Express, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first." *Aytes*, 2012 WL 1831272, at *12. The language in Asplundh's Waiver is similar to the language in *Aytes*. This factor weighs in favor of Shupe's knowing and voluntary execution of the Waiver.

Shupe does not dispute that there was consideration for Asplundh's Waiver. Asplundh provided consideration when it employed Shupe and paid her wages. *Dunn*, 780 F.Supp.2d at 574. This factor weighs in favor of Shupe's knowing and voluntary execution of the Waiver.

Shupe argues that the cases in which courts have upheld statute-of-limitations waivers have turned on "the negative circumstances presented in [her] case in isolation, as opposed to a combination of all of them in one case . . . ." To the contrary, the court in *Dunn* upheld a statute-of-limitations waiver where the plaintiff allegedly "received only a high

school education, was given insufficient time to review the Application, and was unable to consult an attorney before signing [the waiver]." 780 F.Supp.2d at 577. Shupe's argument is not well taken.

Shupe also relies on this Court's decision in *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370 (6th Cir. 2005). This Court held that an arbitration agreement was not knowingly and voluntarily signed when:

> Plaintiffs typically were hired on the spot after a brief interview, during which the hiring manager hurriedly presented them with various documents that they were instructed to sign in order to be considered for a job. According to one . . . plaintiff, Ryan's managers would place an 'x' in every spot an applicant is required to sign, and applicants would be told to sign every 'x' without any explanation. The hiring manager usually would not mention the arbitration agreement, and Plaintiffs had no opportunity to take the Arbitration Agreement home or consult an attorney, even though the agreement purports to afford them that right. . . . Plaintiffs were given no option to revoke their consent to the Arbitration Agreement.

*Id.* at 381-82.

*Walker* is distinguishable for three reasons. The waiver of an arbitration agreement involves a substantive right to a judicial forum. *Id.* at 382. The shorter statute of limitations here involves a procedural right. *Aytes*, 2012 WL 1831272, at *13. The waiver in *Walker* was contained in a twelve-page application packet that contained five pages of single-spaced rules and procedures governing the arbitration procedure.

*Walker*, 400 F.3d at 373. The Waiver in this case was a single page and was clear and direct. The management in *Walker* also provided misleading information about what the arbitration agreement meant. *Id.* at 382. Shupe has not provided any evidence that Asplundh attempted to mislead her in any way. *Walker* is not controlling or persuasive in this case.

Shupe also argues that Asplundh should have provided her with a copy of the Waiver when she was terminated in August 2011. An employer is not required to provide an employee with notice of a statute-of-limitations waiver at the time of termination. "One who signs a contract cannot seek to avoid it on the basis that he did not read it or that he supposed it was different in its terms." *Mannix v. Cnty. of Monroe*, 348 F.3d 526, 533 (6th Cir. 2003). This factor weighs in favor of Shupe's knowing and voluntary execution of the Waiver.

The district court did not err in deciding that Shupe knowingly and voluntarily signed the Waiver. There is no genuine dispute of material fact about the validity of the Waiver. Shupe did not bring her claims within six months of her termination. The district court did not err in granting Asplundh's motion for summary judgment.

## IV.

The district court properly found that the amount in controversy exceeded $75,000.00. The district court's order

denying Shupe's motion to remand is **AFFIRMED.** The district court properly found that Shupe knowingly and voluntarily signed the six-month statute-of-limitations waiver. The district court's order granting Asplundh's motion for summary judgment is **AFFIRMED.**