**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0674n.06

No. 20-1020

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 23, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| DEANGELA SOLOMON, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CARITE CORPORATE LLC, et al., | ) | |
| | ) | |
| Defendants-Appellants. | ) | OPINION |
| | ) | |

---

**Before: GILMAN, BUSH, and READLER, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** Plaintiff DeAngela Solomon filed this lawsuit against her former employer, CARite Corporate, LLC, former supervisor, Eugene Hughey, and former coworker, Angela Barnes. She claims that Hughey subjected her to a hostile work environment and sexually harassed her in violation of Title VII of the 1964 Civil Rights Act and in violation of the Elliott-Larsen Civil Rights Act. She also claims that Barnes defamed her to other CARite employees, including Hughey.

Defendants filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, asserting that Solomon's claims fell within the scope of a valid arbitration agreement. The district court denied Defendants' motion, which it treated as a Rule 56 motion for summary judgment because both parties supported their arguments with extra-pleading documents. The court held that the arbitration agreement was void because Solomon was coerced into signing it, and that, even if it was not void, the agreement did not cover Solomon's claims.

For the reasons discussed below, the district court erred.  We thus **REVERSE** and **REMAND** with instructions to grant Defendants' motion for summary judgment and compel arbitration of Solomon's claims.

**I.**

Solomon began working for CARite in September 2015.  In June 2016, she was transferred to CARite's Taylor, Michigan location, upon the recommendation of her supervisor, Hughey, who transferred to that facility as well.  After the transfer, Hughey allegedly began behaving in an inappropriate manner, including discussing the intimate lives and physical attributes of female coworkers.  Barnes allegedly participated in such conversations, telling coworkers that Solomon was promiscuous and had plastic surgery to enhance her appearance.  Solomon also states that on July 11, 2018, Hughey made a particularly lewd, sexually suggestive remark to her in front of coworkers, at which point her experience at CARite "completely soured."  Solomon resigned in August 2018.

Solomon signed an arbitration agreement on July 14, 2017.  She claims that Hughey told her that, if she didn't sign, she would be terminated and that, at the time he asked her to sign it, she had very little time to review the agreement because she was busy with her daily work duties. Solomon admits, however, that she read through the document for five to ten minutes before signing it, that she possesses some post-secondary education, and that she had experience reviewing car-sales contacts, but she says that she did not understand the arbitration agreement or have the opportunity to consult a lawyer.

The three-page arbitration agreement provides in pertinent part:

1. "CARite . . . and the undersigned employee agree to submit employment disputes covered by this Agreement to final and binding arbitration."

2. "This Agreement covers all claims arising in the course of an employee's employment by CARite not specifically excluded . . . . Such claims include any and

all alleged violations of any state of federal law . . . [which] may include . . . any and all unlawful employment discrimination and/or harassment claims. This Agreement covers any claim an employee might have against any officer, director, employee, or agent of . . . CARite."

3. "The following claims are not covered under this Agreement . . . claims made with any governmental agency such as the Equal Employment Opportunity Commission."

4. "This Agreement shall provide for the broadest level of arbitration of claims between CARite and employee under state law."

5. "In consideration for [Solomon's] employment with [CARite] the undersigned employee agrees that any dispute or claim arising out of or relating to [Solomon's] employment with CARite, shall be settled by final and binding arbitration as set forth in the above Arbitration Agreement."

6. "BOTH PARTIES ACKNOWLEDGE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT IN ITS ENTIRETY AND AGREE TO ABIDE BY ITS TERMS."

On August 1, 2019, Solomon filed an employment-discrimination lawsuit against CARite, Eugene Hughey, and Angela Barnes in the Eastern District of Michigan. In Counts 1 and 2, Solomon sued CARite and Hughey for sex discrimination and a hostile work environment under Title VII of the 1964 Civil Rights Act. In Counts 3 and 4, Solomon sued CARite and Hughey for sex discrimination and a hostile work environment under Michigan's Elliott-Larsen Civil Rights Act. In Count 5, Solomon sued Barnes for defamation.

Defendants filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure to compel arbitration. In response to Defendants' motion, Solomon argued that the arbitration agreement was unenforceable because it lacked mutuality of obligation and because she did not knowingly and voluntarily waive her right to pursue claims in a judicial forum. Both parties supported their arguments with extra-pleading documents, so the district court treated Defendants' 12(c) motion as a motion for summary judgment.

In a rather short order, the district court denied Defendants' motion. First, the district court held that the entire arbitration agreement was invalid, reasoning that Hughey coerced Solomon

into signing it because she was incapacitated by her fragile economic position and Hughey's threat to terminate her if she did not sign. Second, it held that Solomon's Title VII claims were excluded from the terms of the arbitration agreement because Section 3 of the agreement states that "claims made with any government agency such as the Equal Opportunity Commission" are "[n]ot [c]overed by this [a]greement." Third, the court held that Defendants failed to argue that Solomon's defamation claim against Barnes was included within the scope of the arbitration agreement and that, even if they had, it was not clear that the claim was included. For the following reasons, we **REVERSE** and **REMAND** with instructions to grant Defendants' motion for summary judgment and to compel arbitration on all counts.

## II.

A court should grant a motion for summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'" *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018) (quoting *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993)). "At the summary judgment stage, 'the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party.'" *Wright v. City of Euclid*, 962 F.3d 852, 964 (6th Cir. 2020) (quoting *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013)). However, an adverse party "may not rest upon mere allegations or denials, but instead "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

We review the district court's decision not to compel arbitration de novo. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 716 (6th Cir. 2012). In considering the district court's

denial of Defendants' motion to compel arbitration, we remember that "the basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). Arbitration agreements are on "equal footing with other contracts," and must be enforced according to their terms. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

"Because arbitration agreements are fundamentally contracts, [this Court] review[s] the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). As such, arbitration agreements may be invalidated for any reason that a contract can be invalidated for under state law, such as coercion, duress, or incapacitation. *See Jackson*, 561 U.S. at 67. Plaintiff "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

### A. Whether the arbitration agreement encompasses Solomon's Title VII and defamation claims.

#### 1. Title VII claims

The district court incorrectly held that Solomon's Title VII claims are not covered by the arbitration agreement pursuant to Section 3, which excludes "claims made with any governmental agency such as the Equal Employment Opportunity Commission." At first glance, this provision might seem to conflict with Section 2 of the arbitration agreement, entitled "Claims Covered by this Agreement." Section 2 states that "any and all unlawful employment discrimination and/or harassment claims" are to be adjudicated by final and binding arbitration. We must read these

sections harmoniously if it is possible to do so. *See Solo v. United Parcel Serv., Co.*, 947 F.3d 968, 973 (6th Cir. 2020) (holding that contracts are to be construed "as a whole, giving harmonious effect, if possible, to each word and phrase" (quoting *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 781 n.11 (Mich. 2003))).

Read together harmoniously, these two sections exclude from arbitration nothing more than claims under the exclusive jurisdiction of the EEOC. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002) (explaining that the EEOC has "exclusive jurisdiction over the claim for 180 days," during which time "the employee must obtain a right-to-sue letter from the agency before prosecuting the claim" in federal court). They do not, as Solomon suggests, exclude claims that were processed with the EEOC before a private cause of action was filed in federal court. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (distinguishing between charges filed "with the EEOC" and private judicial actions brought in federal court). Solomon's claims fall in the latter camp, and they are thus subject to the arbitration agreement.

### 2. Defamation claims

Count 5 of Solomon's complaint alleges that her former coworker, Angela Barnes, defamed her by telling other coworkers that Solomon had plastic surgery to improve her appearance and was sexually promiscuous. Section 2 of the arbitration agreement states, "This Agreement covers all claims arising in the course of an employee's employment with CARite" including "any claim an employee might have against any officer, director, *employee*, or agent of CARite[.]" Barnes is an employee of CARite and the incident in question occurred in the course

of Solomon's employment with CARite. Thus, Count 5 is plainly covered by the arbitration agreement.[1]

## B. Whether Solomon was coerced into or incapacitated when signing the agreement.

The district court also erred in holding that Solomon was coerced into signing the arbitration agreement. Under Michigan law, a proper showing of economic duress or coercion requires a plaintiff to demonstrate that she was threatened with serious financial harm *and* that the defendant acted unlawfully. *Whirlpool Corp. v. Grigoleit Co.*, 713 F. 3d 316, 324 (6th Cir. 2013). Here, Solomon claims that she was coerced into signing the arbitration agreement because Hughey threatened to fire her if she did not sign the agreement and, at the time, she was a single mother to a disabled child and she needed to keep her job. But "[f]ear of financial ruin alone is insufficient to establish economic duress; it must also be established that the person applying the coercion acted unlawfully." *Apfelblat v. Nat'l Bank Wyandotte-Taylor*, 404 N.W.2d 725, 728 (Mich. Ct. App. 1987) (citation omitted). "All bargaining . . . comes with implicit economic and psychological pressures," but a belief that one has no choice in signing an agreement, "in view of the economic benefits offered and the risk of economic hardship if . . . declined," is "an accepted part of the bargaining process" and not grounds to invalidate a contract. *Gascho v. Scheurer Hosp.*, 400 F. App'x 978, 983 (6th Cir. 2010) (citation omitted).

As explained by the Supreme Court of Michigan in *Hackley v. Headley*, when a party, such as CARite, "threatens nothing which he has not a legal right to perform, there is no duress." 8 N.W. 511, 513 (Mich. 1881). Because CARite had a legal right to fire Solomon as an at-will employee, CARite's conditioning of Plaintiff's continued employment on her signing the arbitration

---

[1] Solomon asserts that Defendants forfeited their argument that Count 5 is subject to the arbitration agreement because they did not raise it at the district court level. But Defendants did raise the issue in their motion to dismiss and/or compel arbitration, arguing, "Plaintiff's claims fall within the scope of her agreement to arbitrate. Plaintiff expressly agreed to arbitrate any claim 'arising in the course of an employee's employment by CARite,' including 'torts.'"

agreement does not amount to unlawful conduct. Therefore, Solomon has not shown that she was coerced into signing the agreement.

The district court further erred in holding that Solomon was incapacitated when signing the arbitration agreement. Under Michigan law, a holding that a plaintiff was "incapacitated" to enter into a contract requires a showing "not only that the person was of unsound mind or insane when it was made, but that the unsoundness or insanity was of such a character that he had no reasonable perception of the nature or terms of the contract." *Rowan v. Brookdale Senior Living Cmtys., Inc.*, 647 F. App'x 607, 610 (6th Cir. 2016) (quoting *Howard v. Howard*, 352 N.W.2d 280, 282 (Mich. Ct. App. 1984)). Here, Solomon does not argue that she was of an unsound mind or insane when she signed the agreement, and she admits that she took five to ten minutes to read through the agreement before signing. Further, the economic pressure that Solomon might have felt to sign the agreement to maintain her employment is insufficient to constitute incapacity. *See Apfelblat*, 404 N.W.2d at 728.

**C. Whether the arbitration agreement is invalid for want of mutuality of obligation.**

Under Michigan law, a contract requires "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich. v. State*, 866 N.W.2d 782, 804 (Mich. 2015) (citing *Detroit Tr. Co. v. Struggles*, 286 N.W. 844, 846 (Mich. 1939)). "A contract lacks mutuality when one party is obligated to perform, but not the other." *Jaye v. Tobin*, 202 N.W.2d 712, 715 (Mich. Ct. App. 1972). But "an employment contract is invalid only if the lack of mutuality amounts to a lack of consideration." *Posselius v. Springer Pub. Co.*, No. 306318, 2014 WL 1514633, at *3 (Mich. Ct. App. Apr. 17, 2014) (citation omitted); *see also Frazier Indus., L.L.C. v. Gen. Fasteners Co.*, 137 F. App'x. 723, 730 (6th Cir. 2005) ("Over the years, the 'mutuality of obligation' element in contract formation theory has been eliminated by the logical recognition that not all contracts

require that element to be valid." (citations omitted)); *Toussaint v. Blue Cross & Blue Shield of Mich.*, 292 N.W.2d 880, 887 (Mich. 1980) ("The enforceability of a contract depends . . . on consideration and not mutuality of obligation."). Therefore, the "proper inquiry" is whether proper consideration has been given for the agreement. *Toussaint*, 292 N.W.2d at 600.

In Michigan, continued employment is sufficient consideration to validate a contract in an at-will employment setting. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 460 (6th Cir. 2013). The "Acknowledgement" section of the arbitration agreement states that Solomon signed "[i]n consideration for [her] employment with" CARite, and Solomon continued to be employed for over a year by CARite after signing the arbitration agreement. Therefore, the arbitration agreement is not invalid for want of mutuality of obligation because it is supported by sufficient consideration.

## D. Whether Solomon knowingly and voluntarily waived her right to a judicial forum for her Title VII claims.

Solomon reiterates a final argument on appeal that the district court declined to address: that she did not knowingly and voluntarily waive her right to a judicial forum for her prospective Title VII claims.

We apply "ordinary contract principles in determining whether" a waiver of Title VII claims is valid, and we "remain[] alert to ensure that employers do not defeat the policies of . . . Title VII by taking advantage of their superior bargaining position or by overreaching." *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995). We consider: (1) the plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the circumstances." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (quoting *Adams*, 67 F.3d at 583) (holding that an employee knowingly and voluntarily waived her right to

pursue Title VII claims in a judicial forum when she signed an arbitration agreement). Even considering the facts presented most favorably to Solomon, she knowingly and voluntarily waived her right to adjudicate Title VII claims in a judicial forum.

First, Solomon possessed sufficient experience, background, and education to knowingly and voluntarily waive her Title VII claims. In *Sako v. Ohio Department of Administrative Services*, we determined that a plaintiff—who was a native French-speaker, had a high-school education, and had taken some English classes—had sufficient experience, background, and education to understand the brief contract that he signed. 278 F. App'x 514, 518–19 (6th Cir. 2008). Similarly, in *Hank v. Great Lakes Construction Co.*, we held that a plaintiff with a GED and a post-secondary proficiency in reading and comprehension had sufficient experience, background, and education to voluntarily and knowingly agree to a contract. 790 F. App'x 690, 699 (6th Cir. 2019). Here, Solomon possesses a high-school-level education, some post-secondary education, and has experience reviewing and executing car sales contracts—all of which place her in a better position than the plaintiffs in *Sako* and *Hank* to understand the three-page arbitration agreement that she signed.

The second factor is a closer call. On the one hand, viewing the evidence in Solomon's favor, she was handed the document in the middle of her workday, and Hughey told her to sign the document or her employment would be terminated. He stood behind her while she read through the agreement, and she spent only five to ten minutes reviewing the arbitration agreement, without the assistance of counsel. On the other hand, the plaintiff in *Sako* also signed his agreement within "a matter of minutes." 278 F. App'x at 518. And Solomon failed to request more time or the opportunity to consult a lawyer before signing the agreement. In *Hank*, we weighed factor two in the employer's favor when the plaintiff failed to request more time to review a contract or to

consult with an attorney before signing it. 790 F. App'x at 700. Given the similarities in this case to the circumstances in *Sako* and *Hank*, this factor weighs slightly in CARite's favor.

Third, the arbitration agreement is more than sufficiently clear. Section 1 of the arbitration agreement states that "the undersigned employee agrees to submit employment disputes covered by this Agreement to final and binding arbitration." Section 5 of the agreement states that it "waive[s] an employee's right to pursue [federal] rights and remedies in a judicial forum, including the right to a jury trial. By signing this Agreement, the undersigned employee voluntarily agrees to arbitrate his or her claims covered by this Agreement." Finally, the "Acknowledgement" section preceding the signing block states, "[Both parties] specifically acknowledge that by agreeing to the terms of the Agreement, they are waiving the right to pursue claims covered by the Agreement in a judicial forum and instead agree to arbitrate all such claims." These unambiguous terms "leave no room for doubt about" their meaning. *Gascho*, 400 F. App'x at 982 (6th Cir. 2010).

Fourth, as discussed above, in Michigan, continued employment is sufficient consideration to support contract formation, *see Tillman*, 735 F.3d at 460, and Solomon continued to be employed for over a year by CARite after signing the arbitration agreement.

Fifth, Solomon contends that the totality of the circumstances counsels against holding that the waiver was made knowingly and voluntarily. For instance, she was not given any advance notice about the document, and her boss watched as she reviewed the document and threatened to fire her if she did not sign it. But, as discussed above, Solomon was neither coerced into nor incapacitated when signing the agreement, so this factor does not help her either. *See Gascho*, 400 F. App'x at 5 ("Gascho's belief 'that [she] had no choice' in signing the agreement, in view of the economic benefits offered and the risk of economic hardship if she declined the offer, does not by itself state a claim because this kind of threat is 'an accepted part of the bargaining process.'"

(citations omitted)).

Because all factors weigh in CARite's favor, we hold that Solomon knowingly and voluntarily waived her right to adjudicate Title VII claims in a judicial forum.

**III.**

For the foregoing reasons, we **REVERSE** the district court's judgment and **REMAND** with instructions to grant Defendants' motion for summary judgment and compel arbitration of Solomon's claims.