RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0317p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

CECILIA TILLMAN,

        *Plaintiff-Appellee*,

        *v.*

MACY'S, INC.,

        *Defendant-Appellant*.

No. 11-2580

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-10994—Sean F. Cox, District Judge.

Argued: April 5, 2013

Decided and Filed: October 31, 2013

Before: ROGERS, WHITE, and ALARCÓN, Circuit Judges.[*]

_____

## COUNSEL

_____

**ARGUED:** Michael C. Christman, MACY'S LAW DEPARTMENT, St. Louis, Missouri, for Appellant. Alistair Elizabeth Newbern, VANDERBILT APPELLATE LITIGATION CLINIC, Nashville, Tennessee, for Appellee. **ON BRIEF:** Michael C. Christman, MACY'S LAW DEPARTMENT, St. Louis, Missouri, Maurice G. Jenkins, Kimberly A. Yourchock, JACSON LEWIS LLP, Southfield, Michigan, for Appellant. Alistair Elizabeth Newbern, VANDERBILT APPELLATE LITIGATION CLINIC, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

ROGERS, Circuit Judge. Macy's appeals the district court's denial of its motion to compel arbitration. Relying on *Hergenreder v. Bickford Senior Living Group, LLC*,

_____
[*]The Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

1

656 F.3d 411 (6th Cir. 2011), the district court found that there was no agreement between Macy's and its former employee, Cecilia Tillman, to arbitrate disputes arising from her employment. Unlike in *Hergenreder*, however, Macy's provided sufficient notice of its offer to enter into an arbitration agreement, and Tillman accepted by continuing her employment with Macy's and not returning either of the two opt-out forms provided to her. Arbitration should therefore have been required, notwithstanding the absence of an employee-signed written agreement to arbitrate.

Tillman filed suit *pro se* in the district court, alleging that Macy's discriminated against her on the basis of her race in violation of Title VII when it terminated her employment in 2009. In response, Macy's filed a motion to compel arbitration and stay the action pending arbitration, based on what Macy's claimed was an agreement entered into by the parties to participate in a dispute-resolution program called Solutions InSTORE. This dispute-resolution process had four steps, the last of which was binding arbitration. Macy's argued that Tillman assented to participation in the program and therefore that suit in federal court was impermissible.

The alleged agreement was based on the following facts. Tillman, who was hired by May Department Stores in 2001, became a Macy's employee when Macy's (then incorporated as Federated Department Stores, Inc.) merged with May in 2005. Following the merger, Macy's conducted a roll-out of Solutions InSTORE that extended the program to former May's employees, including Tillman. For Tillman, the roll-out first consisted of a mailing that included a "Welcome to Solutions InSTORE" postcard, the Plan Document, and an Early Dispute Resolution Program Election Form ("2006 Election Form"). The Plan Document described in detail the dispute-resolution process and noted that while employees were automatically "covered" by arbitration by virtue of continuing employment with Macy's, they could opt out of binding arbitration. The document stated that if employees did not opt out, they would not be able to bring their claims in court. The 2006 Election Form provided a procedure and an opportunity to opt out of arbitration. The form directed employees to return it by October 31, 2006 if they did *not* want to be bound to arbitrate employment-related disputes. Macy's provided

records showing that Tillman's packet was mailed and that it was not returned as undeliverable. Tillman stated that she did not receive the mailing.

On October 13, 2006, Tillman attended a mandatory video screening where she was shown a video describing the InSTORE Program. Tillman concedes that she was at the meeting, as documented by the sign-in sheet from the meeting. Macy's states that Tillman was provided with detailed information about the opt-out process and the steps she would need to take to keep from being bound to arbitrate future disputes. However, Tillman recalls that Macy's management "breezed over" the information and did not offer any "specificity or explanation." Macy's also states that employees at the meeting were provided with a brochure about the program. Tillman does not deny receiving the brochure.

In April 2007, after Tillman did not return the opt-out form, Macy's sent a "You're In Good Company" brochure that stated that she "now ha[d] all the Steps of the [Solutions InSTORE] program available to" her, specifically including Step 4 Arbitration. The brochure noted that she, like 97% of her co-workers, had not returned her opt-out form. Tillman stated that she did not receive this mailing.

Finally, in October 2007, Macy's sent Tillman another Election Form ("2007 Election Form"), along with a "We've Got You Covered" brochure, and an "Opening the Door to More" program update. The packet directed Tillman to return the opt-out form by November 15, 2007, unless she agreed to be bound to arbitrate future disputes. Tillman did not return the form; again she claimed that she did not receive the mailing despite records indicating that it was sent to her address and was not returned as undeliverable.

Tillman argued to the district court that the "roll-out" did not amount to an offer to enter into an agreement to arbitrate, and that she did not accept any such offer. The district court decided in Tillman's favor, applying *Hergenreder v. Bickford Senior Living Group, LLC*, and denied Macy's motion to compel arbitration of Tillman's Title VII claims. The district court found it significant that Tillman was not "required to read" the Plan Document, and reasoned that "her failure to send in an opt-out form could simply

be the result of her not having read the Plan Document that contains the alleged offer to arbitrate," especially since "the company was changing ownership and [Tillman] was receiving many mailings from her employer."

The district court also held that Tillman did not knowingly and voluntarily waive her right to a jury trial. The court noted that Tillman did not sign a written waiver and that the opt-out form contained "confusing language as to what the employee is agreeing to." The court held that the totality of the circumstances—including the volume of mail Tillman was receiving from Macy's, the lack of a requirement that Tillman read the materials, and the lack of any document signed by Tillman—weighed against a finding of a knowing and voluntary waiver. After the district court denied the motion to compel arbitration, Macy's filed an interlocutory appeal pursuant to § 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a).

The district court denied Macy's motion to stay proceedings during the appeal, stating that Macy's would not suffer irreparable harm if the district court allowed discovery to proceed, since the arbitration agreement also guaranteed discovery to the same extent as under the Federal Rules. Macy's filed a motion with this court to stay the trial proceedings during the appeal, and we granted that motion on June 19, 2012.

A limited review is required before compelling an unwilling party to arbitrate. Such a review shows that the dispute in this case is arbitrable because "a valid agreement to arbitrate exists between the parties and . . . the specific dispute falls within the substantive scope of that agreement." *See Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (prescribing the proper analysis).

Macy's effectively communicated to Tillman an offer to enter into a binding arbitration agreement and to waive her right to a jury trial. We reach this conclusion under Michigan contract law because the parties focus the dispute on a question of basic contract formation—offer and acceptance. "Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *See Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007).

Macy's notified Tillman of the arbitration program in person at a mandatory meeting where she watched a video and was provided with an informational brochure. The video informed her that the program would be going into effect and that it included an arbitration component that would be "final and binding for both sides." The video also encouraged her "to read the materials available about Solutions InSTORE and to talk to [her] supervisor" if she had questions about the program. The brochure that was distributed at that same meeting provided more detailed information about the program. The brochure detailed the four steps of the program, including arbitration, which it compared and contrasted with court proceedings. In addition to graphical representations of the process, the brochure included the following text:

> Your Solutions InSTORE enrollment period will be your opportunity to decide whether you want to receive all four steps of this program. You are automatically covered by Step 4 unless you choose to exclude yourself. When covered by Step 4 final and binding arbitration, you and the Company agree to use arbitration as the sole and exclusive means to resolving any dispute regarding your employment; we both waive the right to civil action and a jury trial. If you decide you want to be excluded from participating in and receiving the benefits of Step 4, we need you to tell us in writing by completing a form that will be mailed to your home this fall. In this case, Steps 1-3 will continue to apply to you – you will no longer, however, be eligible for the benefits available under the Step 4: Arbitration process.

> We will respect whatever decision you make about Step 4: Arbitration. We urge you to read the Plan Document when you receive it at home by mail this fall and educate yourself about the benefits and limitations of arbitration to make an informed decision that's best for you. There are many sources of information and opinions about arbitration. One excellent source of information is the AAA website, which you can access at www.adr.org.

> Choose to participate in the full program, Steps 1-4. We believe you will find it a good decision for you. In fact, we feel so positively about what this program brings employees and our work environments, we'd like to let you give it a try. If for some reason you find that Step 4: Arbitration is not for you, we'll provide you with one final opportunity in October, 2007 to discontinue your election to receive the benefits of Step 4 at that time. It's that simple.

The brochure notified employees that it was "a summary of some of the provisions, benefits, and limitations, of the Solutions InSTORE program" and informed them, "[y]ou are directed to read the Plan Document for the actual details." In sum, Tillman was provided with information, in person, that would have informed her: that arbitration was an optional part of the dispute resolution process, that arbitration was a final and binding alternative to a civil lawsuit, that agreeing to arbitration meant waiving the right to file a civil action in court and the right to a jury trial, that she was eligible to opt out of participation in that program, and that the process for opting out was to fill out a form that she would receive in the mail.

Macy's also mailed, to Tillman's home, information that further clarified its offer and the method of acceptance—information that, at the meeting, Tillman was informed would be forthcoming.[1] These mailings included (1) the Plan Document and Election (opt-out) Form, (2) a subsequent confirmation postcard letting Tillman know that Macy's did not receive the Election Form and making clear that because she had not returned the form she accepted its offer to arbitrate disputes, and (3) another Election Form providing yet another opportunity to refuse to arbitrate. The Election Forms and Plan Statement made clear that Tillman needed to return the form if she did not want to be included in the arbitration portion of the Solutions InSTORE program, and the Plan Document explained the nature and legal consequences of the arbitration portion of the program. The Plan Document was also available in the Macy's store and online, and Tillman was provided with a link to the website containing the document. The Plan Document stated:

> You can request Arbitration (Step 4). This process involves an Arbitrator. . . . After a hearing, the Arbitrator renders a final decision. The decision is binding on both the Company and you. Nothing in the Solutions InSTORE program, however, prevents you from filing, at any

---

[1] Although Tillman maintains that she did not receive the mailings, we proceed on the assumption that she received the materials sent to her, because properly addressed and posted mail is presumed to have been delivered and received by the person to whom it was addressed, *Hagner v. United States*, 285 U.S. 427, 430 (1932), and the operative question hinges on an objective manifestation of intent to enter into an agreement. *See Hergenreder*, 656 F.3d at 417.

time, a charge or complaint with a government administrative agency like the EEOC, for example.

All Associates agree to be covered by Step 4 – Arbitration by accepting or continuing employment with the Company after the Effective Date. Associates are given the option to exclude themselves from Arbitration by completing an election form within the prescribed time frame. Until and unless an Associate elects to be excluded from arbitration within the prescribed time frame, the Associate is covered by Step 4 – Arbitration.

The Plan Document later stated, in a section titled "Step 4 – Arbitration Rules and Procedures," that:

All Associates are automatically covered by all 4 steps of the program by taking or continuing a job with the Company. That means that all Associates agree, as a condition of employment, to arbitrate any and all disputes, including statutory and other claims, not resolved at Step 3. However, Arbitration is a voluntary condition of employment. Associates are given the option of excluding themselves from Step 4 arbitration within a prescribed time frame. . . . Arbitration . . . replaces any right you might have to go to court and try your claims before a jury. You are covered by Step 4 unless and until you exercise your option to exclude yourself from employment. . . .

Except as otherwise limited, all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law . . . shall be settled exclusively by final and binding arbitration.

Finally, the Plan Document explained once again the exclusive role of arbitration:

By agreeing to arbitration, the Associate and the Company agree to resolve through arbitration all claims described in or contemplated by Article 2 above. This means that neither the Associate nor the Company can file a civil lawsuit in court against the other party relating to such claims. If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program.

These statements clearly inform employees of the nature of the agreement and describe their rights under the Solutions InSTORE arbitration program. The Plan Document further provides information about how to reject the proposed agreement, and this

information is reiterated in the Election Forms, which state that, while employees are automatically "covered by" the first three phases of dispute resolution under the program, they may elect "not to be covered by the benefits of arbitration" by signing and returning the form.

This information was sufficient to constitute a valid offer to arbitrate disputes. "An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it." *Hergenreder*, 656 F.3d at 417 (applying Michigan law, quoting *Kloian v. Domino's Pizza, L.L.C.*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006)). The question of mutual assent "is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Hergenreder*, 656 F.3d at 417 (quoting *Kloian*, 733 N.W.2d at 771).

Our conclusion that Macy's made a valid offer to Tillman is consistent with our decision in *Hergenreder*, which hinged primarily on the concept of notice. The plaintiff in that case was said by her employer to have assented to arbitration based only on a dispute-resolution policy that was not provided by the employer or made available save for a vague reference in an employee handbook that did not explicitly mention arbitration. *Hergenreder*, 656 F.3d at 414–16. We held that the handbook's direction to refer to the company's dispute-resolution procedure for "details" about the procedure did not constitute an offer. Hergenreder's general knowledge that a dispute-resolution procedure existed did not mean that her employer communicated an offer in the absence of her knowledge of either the arbitration language or her employer's desire to create an agreement through the dispute resolution procedure. *Id.*

The facts of this case are far more similar to the cases this court distinguished in *Hergenreder* than they are to the facts of *Hergenreder* itself. *Hergenreder* distinguished *Mannix v. County of Monroe*, 348 F.3d 526 (6th Cir. 2003), on the ground that the employer in that case provided significantly more notice of new policies. The County "posted the revised [employment policies] at least four months before the [plaintiff's] termination . . . on an internal database available to employees [and by holding] meetings

between department heads and employees and put[ting] the policies on the County's email system." *Hergenreder*, 656 F.3d at 418 (quoting *Mannix*, 348 F.3d at 536). In *Hergenreder*, this level of notice was absent, but we suggested that if the dispute-resolution procedure had been "'posted' in a place—either physical or electronic—available to Hergenreder, [if] there were meetings at which Hergenreder was notified of the policies, or [if] Hergenreder was aware of the [dispute-resolution procedure] at all," the result may have been different. *Id.* at 418–19. In Tillman's case, the Solutions InSTORE policy *was* posted electronically, *was* in fact mailed to her, and there *was* a meeting regarding the policy that she was required to—and did—attend. Therefore she cannot, and does not, claim to have been unaware of the arbitration policy. Accordingly, the discussions in *Hergenreder* and *Mannix* support a conclusion that Macy's objectively manifested its intent to enter into an arbitration agreement with Tillman.

Similarly, the discussion in *Hergenreder* distinguishing *Kettles v. Rent-Way, Inc.*, No. 1:09–cv–230, 2009 WL 1406670 (W.D. Mich. May 18, 2009) (applying Michigan law), cuts against Tillman. In *Kettles*, the district court found that an agreement to arbitrate existed because, although the employer provided information to employees in terms of "what to expect"—which did not qualify as an offer—it also sent the employee a document that obligated the employee to submit disputes to the employer's dispute resolution program, which included arbitration. *Id.* at *10. *Hergenreder* contrasted *Kettles* with Hergenreder's lack of such notice. *Hergenreder*, 656 F.3d at 419–20. Like the employer in *Kettles*, Macy's included a casual, welcome-to-the-program type of element in its rollout, but Macy's also took action similar to the employer's in *Kettles*—and dissimilar to the employer's in *Hergenreder*—by mailing the contract-like Plan Document and the Election Forms.

Moreover, the fact that Tillman was not ordered to read the Plan Document and other mailings is not, standing alone, dispositive. Macy's encouraged and directed employees to read the materials. For example, in the video Tillman viewed, "Nancy" stated: "Read all of the material and make sure that [employees] understand it. And if

they don't, if they [have] questions, to definitely ask questions of their Human Resources Manager or their Direct Report Manager because it's such an awesome program . . . ." In the same video, another actor stated: "We encourage you to read the materials available about Solutions In-STORE and talk with your supervisor if you have any questions about this unique program." The brochure provided at the video-screening meeting stated: "You are directed to read the Plan Document for the actual details." Tillman did not provide authority under either the Federal Arbitration Act or Michigan law to support the proposition that for there to be mutual assent an offeror must obligate the offeree to read an offer that has been conveyed. Contrary to Tillman's assertions, Macy's failure to require reading of the numerous arbitration-related documents that it provided her does not amount to a failure to provide notice.

Tillman's conduct following the communication of the offer objectively suggests that she accepted the arbitration agreement by continuing her employment without returning an opt-out form. This performance mirrors that called for in the offer, and "[t]he manifestation of mutual assent may be made wholly or partly by . . . acts or conduct." *See Ludowici-Celadon Co. v. McKinley*, 11 N.W.2d 839, 840 (Mich. 1943). Several decisions applying Michigan law have held that an offer may be accepted through continued employment. For instance, in *Dawson v. Rent-A-Center, Inc.*, 490 F. App'x 727, 730 (6th Cir. 2012), we noted that the plaintiff "demonstrated his assent [to his employer's offer to arbitrate disputes] by continuing to work for Rent-Way" and that "Michigan law permits parties to accept offers through conduct." *See also Kettles*, 2009 WL 1406670, at *5. *See generally Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208, 210–11 (Mich. Ct. App. 1999).

The burden was on Tillman to show that she did not voluntarily and knowingly waive her right to a jury trial. *See K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir. 1985). Tillman did not satisfy this burden, and the district court erred in finding otherwise. The Plan Document stated in plain language: "Arbitration . . . replaces any right you may have to go to court and try your claims before a jury. You are covered by [arbitration] unless and until you exercise the option to exclude yourself

from arbitration." The Plan Document also clarified that "all employment-related legal disputes . . . shall be settled exclusively by final and binding arbitration. . . . Merely by way of example, Employment-Related Claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), . . . . [and] state discrimination statutes." Finally, in a section titled "Article 3 – Dismissal/Stay of Court Proceeding," the Plan Document provided that:

> By agreeing to arbitration, the Associate and the Company agree to resolve through arbitration all claims described in or contemplated by Article 2 above. This means that neither the Associate nor the Company can file a civil lawsuit in court against the other party relating to such claims. If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program.

This information reiterated the language in the brochure that was provided to Tillman in person, which stated, "you and the Company agree to use arbitration as the sole and exclusive means to resolving any dispute regarding your employment; we both waive the right to civil action and a jury trial." Because the information conveyed in the Plan Document and brochure was part of a valid offer, and because Tillman accepted that offer by continuing her employment[2] at Macy's without returning an opt-out form, it follows that Tillman knowingly and voluntarily assented to all of its terms, including this clearly stated waiver of the right to trial by jury.

This conclusion is consistent with the five factors this court looks to in evaluating whether there has been a knowing and voluntary waiver of prospective civil-rights claims:

> (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had the opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

---

[2]Contrary to Tillman's argument, Macy's advanced this argument in its motion to compel arbitration.

*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003). Tillman claims that her education level as a high-school graduate means that she lacks the necessary "experience, background, and education" to consent knowingly to a waiver of her rights. The language quoted above from the Plan Document and brochure states in understandable terms that "neither the Associate nor the Company can file a civil lawsuit in court." Tillman points to *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 381 (6th Cir. 2005), but in that case we upheld the district court's determination that the plaintiffs did not knowingly and voluntarily consent to arbitration in part by agreeing with the district court that most of the plaintiff class had experience, background, and level of education that was "low to mid-level" for reasons including "dire financial circumstances" and non-completion of high school for most of the plaintiffs. Furthermore, we did not rely on that factor alone to support our holding on the waiver issue. *Id.* at 381–82.

Based on the language in the Plan Document and brochure, the terms of the waiver were clear, and Tillman had more than two months to review the Solutions InSTORE agreement before the program went into effect. She had over a year to opt out of the agreement—enough time to consult an attorney. She does not argue that the waiver should fail due to a lack of consideration. In any event, *Hergenreder* recognizes that continued employment is sufficient consideration for a waiver. 656 F.3d at 421.

Tillman contends that the language in the waiver could have been clearer or more stereotypically contractual. We recognize that opt-out schemes for accepting arbitration contain a risk greater than in opt-in systems that some employees do not know what they have agreed to. Cases like this one would likely be fewer if companies like Macy's would use an opt-in system. But we cannot say that under Michigan law an opt-out system is inherently insufficient, and under the facts of this case a contract was created. We reverse the denial of the motion to compel arbitration and remand for proceedings consistent with this opinion.

In the court of appeals order granting the motion to stay pending appeal, the motions panel invited the parties to submit additional briefing on the question "whether

an appeal from the denial of a motion to compel arbitration divests the district court of jurisdiction to proceed on the merits of the claim." However, because our answer to this question would have no effect in the present case, we do not reach that issue. *See* Pierre N. Leval, *Madison Lecture, Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1255–56, 1261–63 (2006). We appreciate the parties' thoughtful briefing of the issue, and regret any inconvenience caused by our invitation.