John O'DONNELL, Plaintiff–Appellant,

v.

GENZYME CORPORATION; Sanofi U.S., Defendants–Appellees.

No. 15–3391.

United States Court of Appeals, Sixth Circuit.

Feb. 3, 2016.

BEFORE: BOGGS and MCKEAGUE, Circuit Judges; BERTELSMAN, District Judge.*

## OPINION

BERTELSMAN, District Judge.

Plaintiff–Appellant brought suit alleging that his employer: (1) violated an Ohio state anti-retaliation statute when it issued him a formal warning shortly after he opposed what he perceived to be gender discrimination against another employee, and (2) violated Ohio public policy when it created what Plaintiff argues were objectively intolerable working conditions amounting to a constructive discharge because he openly opposed the off-label sale of one of the employer's medical products. The district court granted summary judgment to the employer on both claims, and Plaintiff appeals. Plaintiff also argues on appeal that the district court denied him sufficient time to conduct discovery and that the court inappropriately weighed evidence against him. We affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. O'Donnell's Employment

The facts related to Plaintiff's substantive claims are set forth in the district court's opinion, *O'Donnell v. Genzyme Corp.*, No. 1:14–CV–01767, 2015 WL

---

* The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1119719 (N.D.Ohio Mar. 11, 2015), and we find it necessary to provide only a general summary for purposes of framing our discussion.

Defendant–Appellee Genzyme Corporation is a biotechnology company that develops and sells medical products. Before he resigned in October 2012, Plaintiff–Appellant John O'Donnell worked for Genzyme for thirteen years, managing a group of employees who sold a product called Seprafilm for use in open abdominal surgeries. In 2004, Seprafilm sales began to decline due to wider acceptance of new surgical techniques. In the face of these reduced sales, some of Genzyme's sales representatives began promoting an off-label use of Seprafilm,[1] which made it marketable for the new surgical techniques. Beginning in 2006, O'Donnell openly opposed this practice of off-label promotion, which he believed caused his managers at Genzyme to issue him declining performance ratings, overlook him for promotions, and make negative comments about him.

In June 2012, Genzyme decided to terminate one of O'Donnell's subordinates, claiming she had violated certain regulations. Genzyme instructed O'Donnell to participate in the termination, as he was the employee's direct supervisor. O'Donnell refused to participate, believing that Genzyme was actually using the alleged violations as a pretext for gender discrimination against the female employee. Approximately one week after Genzyme terminated the employee, it issued O'Donnell a formal warning based, in part, on the unprofessional manner in which he refused to participate in the termination.

In October 2012, Genzyme substantially increased its sales goal for Seprafilm, to take effect in 2013. Believing the new goal to be unattainable without off-label promotion of Seprafilm, O'Donnell resigned approximately two weeks later. He then brought this action against Genzyme for retaliation and constructive discharge in violation of public policy.

**B. Discovery**

O'Donnell filed this case in Ohio state court in July 2014, and Genzyme removed to federal court in August. Following a case-management conference in early October, the district court entered an order: (1) scheduling a status conference for December 17, (2) ordering the parties to complete discovery necessary to support dispositive motions within ninety days, with the deadline being January 5, 2015, and (3) ordering all other discovery completed by March 16. Neither party objected at the case-management conference to the schedule ordered by the court.

1. Electronically Stored Information (ESI)

Genzyme timely made its first responses, productions, and objections on November 10, 2014. Thereafter, as the parties attempted to define the appropriate scope of ESI discovery with respect to document custodians, date range, and search terms, their communications became more heated and less productive. The record reflects that when the parties initially discussed the scope of ESI in late October to early November, they discussed six document custodians, a date range of four-and-a-half years, and were waiting for O'Donnell to propose search terms. At Genzyme's continued insistence, O'Donnell provided an initial list of twelve proposed search terms on November 19.

---

**1.** "Off-label" refers to uses that have not been approved by the Food and Drug Administration.

On December 1, O'Donnell submitted to Genzyme a substantially broader request for ESI that included thirty document custodians, a date range of nine years, and forty-one search terms. Several contentious emails followed, with Genzyme arguing that the request was overbroad and unduly burdensome, and with both parties making various criticisms of the other's discovery tactics. Though it was apparent they would not compromise on the scope of ESI, neither party brought the dispute to the court's attention until a scheduled status conference on December 17. The parties ultimately submitted position papers on December 31 for the court's consideration. On January 12, 2015, the court adopted Genzyme's ESI proposal in full, finding that it more effectively balanced the need to identify relevant documents and the need to avoid a disproportionate production burden. Genzyme moved for summary judgment the same day.

The court's ESI order did not specify a deadline for Genzyme's production. According to Genzyme, it began reviewing ESI documents upon receipt of the court's order, made its first ESI production on February 10, made further productions on a rolling basis throughout February and March, and had substantially completed its ESI production by March 11 when the court granted summary judgment. Because O'Donnell's deadline for opposing Genzyme's motion for summary judgment was on February 12, O'Donnell did not have time to review and incorporate ESI discovery into its briefing with respect to that motion. However, O'Donnell did not move to compel ESI production more quickly or otherwise complain about the timing of the production.

### 2. Deposition Scheduling

In late October 2014, Genzyme informed O'Donnell that it was holding two dates in December open for him to depose Genzyme personnel, and it requested the identities of those deponents. It stressed to O'Donnell the need to schedule depositions as soon as possible, given the relatively short period for dispositive-motion discovery. However, O'Donnell consistently stated that he did not want to schedule depositions until they were further along in discovery. The record shows that as late as December 17, with less than three weeks left until the initial discovery deadline, O'Donnell still had not provided identities of deponents.

### 3. Parties' Motions

On December 24, 2014, O'Donnell filed a motion to compel production of certain non-ESI items to which Genzyme had objected. On January 12, 2015, Genzyme moved for summary judgment on all of O'Donnell's claims. O'Donnell's original deadline for opposing summary judgment was January 26. Because, in the days approaching this deadline, the district court had yet to rule on his motion to compel, O'Donnell filed a motion under Federal Rule of Civil Procedure 56(d), requesting an extension of time to oppose summary judgment. The court ruled on O'Donnell's motions on January 26, ordering Genzyme to produce certain non-ESI documents by February 2 and extending O'Donnell's opposition deadline to February 12. O'Donnell did not address any discovery issues in his opposition to summary judgment.

By O'Donnell's extended opposition deadline, he had: (1) received on November 10, December 15, and February 2 certain non-ESI answers and productions pursuant to his interrogatories, requests for production, and requests for admissions; (2) received on February 10 one production of the ESI discovery; (3) deposed at least two witnesses; (4) acquired

several declarations; and (5) been deposed, himself. On March 11, five days prior to the deadline for all discovery and prior to Genzyme's final production of ESI documents, the court granted Genzyme's motion for summary judgment on all counts.

O'Donnell now appeals the district court's judgment.

## II. DISCUSSION

### A. Standards of Review

This court reviews *de novo* a district court's grant of summary judgment. *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir.2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). We must view all evidence, and draw all reasonable inferences therefrom, in favor of the non-moving party. *Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir.2015). Having so viewed the evidence, there is a genuine dispute of material fact only where "there is sufficient evidence for a trier of fact to find for [the non-moving] party." *Id.*

We will overturn a district court's discovery ruling "only if the decision was an abuse of discretion resulting in substantial prejudice." *B & H Med., LLC v. ABP Admin., Inc.*, 526 F.3d 257, 268 (6th Cir. 2008). "An abuse of discretion occurs when the reviewing court is left with the definite and firm conviction that the trial court committed a clear error of judgment." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir.2014). There-

fore, this court may reverse the district court's discovery rulings only if we find that those rulings were "arbitrary, unjustifiable, or clearly unreasonable," and that the rulings substantially prejudiced O'Donnell. *See id.* at 623–24.

### B. Retaliation and Public Policy Claims

 O'Donnell appeals the district court's entry of summary judgment in favor of Genzyme on his substantive claims. The district court issued a twenty-five-page opinion, carefully analyzing the parties' arguments in light of the record before it and the applicable case law. It ultimately concluded that O'Donnell failed to establish his retaliation claim because he failed to provide circumstantial evidence sufficient for a reasonable jury to find that Genzyme's proffered legitimate reasons for his discipline were actually a pretext for retaliating against him because he opposed gender discrimination. With respect to the public-policy claim, it concluded that O'Donnell failed to provide evidence sufficient for a reasonable jury to find that his working conditions were so intolerable that a reasonable employee would have felt compelled to resign.

After carefully reviewing the court record, the district court's opinion, the applicable case law, and the parties' arguments on appeal through both briefing and oral argument, we agree with the district court's decision to grant summary judgment.[2] Because any further discussion of the matter on the part of this court would be unnecessarily duplicative of the thorough analysis provided by the district court and would not enhance this court's

2. The crux of the district court's opinion was that Ohio law required an actual or constructive discharge for the Plaintiff to recover on his public policy claim and the Plaintiff failed to prove this had occurred. As to the retalia-

tion claim, the district court held the evidence showed that Plaintiff's unprofessional conduct was the sole cause of the warning issued to him, and this warning did not amount to a constructive discharge.

jurisprudence, we affirm for the reasons set forth by the district court.

## C. Discovery

O'Donnell argues that the district court abused its discretion with respect to several discovery matters below: (1) granting only in part his Rule 56(d) motion for an extension of time to oppose summary judgment;[3] (2) ordering Genzyme to produce ESI documents without setting a deadline for that production; and (3) granting Genzyme's motion for summary judgment before the final deadline for discovery. He argues these rulings cumulatively resulted in substantial prejudice to his case because he was not allowed adequate time for discovery before the court's dispositive ruling. On appeal, O'Donnell argues that he needed further time to review the ESI that Genzyme produced, receive and review the last production of ESI that Genzyme did not make before summary judgment, and depose further witnesses.

To determine whether the trial court abused its discretion in denying further time for discovery, we consider: (1) when the party seeking further discovery learned of the discovery issue, (2) how further discovery would affect the ruling below, (3) the length of the discovery period, (4) whether the moving party was dilatory, and (5) whether the adverse party was responsive. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010). The primary question will be whether the moving party diligently pursued discovery. *Id.*

### 1. O'Donnell knew of the discovery issues very early in the discovery period.

■ The record shows that as early as October 2, 2014, when the parties submit-

ted their discovery plan to the district court, O'Donnell knew this case would involve ESI discovery and that he needed to reach an agreement as to the scope of that discovery. O'Donnell had enough knowledge about the issues in the case to, at least, begin to identify the appropriate scope of ESI, even though he may not have been able to reach a final agreement that early. Genzyme made its first production on November 10, and O'Donnell could presumably have substantially understood the necessary scope of ESI once he reviewed that production. The record shows he was aware of the need for broader ESI as of December 1 at the latest, which is when he sent Genzyme his complete ESI request. In addition to knowing his desired scope of ESI, combative emails that his counsel exchanged with Genzyme's counsel between December 1 and December 6 show that O'Donnell knew at that time that the parties strongly disagreed as to the appropriate scope of ESI and that court intervention was likely necessary to resolve the issue.

This court cannot effectively consider when O'Donnell learned of the need to depose specific individuals because he has not identified any witness whose deposition he was unable to take due to time constraints. However, his complaint, interrogatories, and other filings show that he knew the identities of nearly everyone he could have wanted to depose: employees promoted over him, the employee he refused to terminate, the managers who disciplined him, and those who decided to discipline him, among others. Because all the discovery issues he sought an extension to resolve were known to him very early in the discovery period, this factor weighs against his argument that he was denied sufficient time for discovery.

---

**3.** Rule 56(d) is substantively equivalent to former Rule 56(f).

## 2. O'Donnell has failed to show that additional discovery would have affected the outcome below.

"A district court generally does not abuse its discretion in denying a Rule 56[ (d) ] discovery request if granting the desired discovery would not have affected its ruling." *Thornton v. Graphic Commc'ns Conference of Int'l Bhd. of Teamsters Supplemental Ret. & Disability Fund,* 566 F.3d 597, 617–18 (6th Cir.2009). In requesting additional time for discovery, a party must "describe with some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment." *Everson v. Leis,* 556 F.3d 484, 493 (6th Cir.2009) (internal quotation marks omitted).

█ O'Donnell speculates that further ESI discovery would have revealed: (1) emails between upper-level managers showing an intent to terminate O'Donnell for unlawful reasons; (2) a lack of documentation to support Genzyme's proffered reason for the termination of O'Donnell's subordinate; (3) documents showing male employees were not subject to discipline for engaging in the same conduct for which the subordinate was terminated; and (4) management's displeasure with O'Donnell for statements he made during an investigation regarding Genzyme's off-label promotion of Seprafilm. The fourth item is unrelated to the dispositive issues in either of O'Donnell's claims. Additionally, concerning O'Donnell's public policy claim, none of these items would have further evidenced objectively intolerable working conditions.

The first three items above may bear on the pretext issue in O'Donnell's retaliation claim. However, O'Donnell's argument that he may find these items with further discovery is not as convincing as it might have been when O'Donnell filed his Rule 56(d) motion because, at that time, he had not yet received any ESI and did not know what that discovery might reveal. The problem with his argument at this point is that, after he filed his opposition to summary judgment but well before he filed his appellate brief, Genzyme substantially completed ESI production. Although O'Donnell possessed substantially all of the ESI for well over the forty-five days he requested in his Rule 56(d) motion, he fails on appeal to describe the nature of any document he actually found in that time to bolster his claim that a smoking gun is still out there. While Genzyme had one additional production scheduled at the time the district court granted summary judgment, O'Donnell's failure to identify a single helpful document from all the ESI in his possession significantly undermines his argument that further discovery would have affected the outcome below.

Finally, O'Donnell argues that his ability to oppose summary judgment was severely prejudiced because he had insufficient time to depose further witnesses. However, he has never identified any person that he sought to depose below, or who he would depose on remand, if allowed more time. His vague argument that he requires further depositions fails to identify any specific facts he hopes to uncover or how those facts would affect the district court's ruling.

Because O'Donnell has failed to show that having more time for discovery would have affected the dispositive issues below, this factor weighs against finding an abuse of discretion.

## 3. The length of the discovery period was not unfairly brief.

█ The district court initially set a ninety-day deadline for discovery neces-

sary to support dispositive motions.[4] Then, by ordering Genzyme to make further production after that date and granting O'Donnell an extension of time to oppose summary judgment, the court effectively extended the deadline by approximately one month. Though the discovery period was rather abbreviated, neither party objected when the court set the schedule, and the period was sufficient for O'Donnell to conduct significant meaningful discovery. Under the circumstances, the length of the discovery period does not weigh heavily in either party's favor.

### 4. O'Donnell's approach to discovery was dilatory in light of the deadlines set by the district court.

█ In late October to early November, the parties had preliminary discussions as to the appropriate ESI document custodians and date range. On November 11, Genzyme's counsel sent the first of several emails to O'Donnell's counsel, requesting that counsel clarify the proposed custodians and provide the proposed search terms, stressing that ESI discovery could not progress until counsel did so. Although O'Donnell provided an initial list of search terms on November 19, he sent a request for a vastly increased ESI production on December 1—including five times the number of document custodians, nearly quadrupling the number of search terms, and doubling the date range the parties had previously discussed. O'Donnell sent this request with no warning to Genzyme that he would so significantly modify his previous request, and actually stated in his request that he knew Genzyme would not accept the new proposal.

By failing to make his complete ESI proposal until one month before the discovery deadline—vastly expanding his previous request and anticipating that Genzyme would not accept it—O'Donnell significantly reduced the likelihood that ESI discovery would be completed on time. This problem was compounded by O'Donnell's delay in bringing the issue to the court's attention until the scheduled status conference on December 17, less than three weeks before the initial discovery deadline. Had O'Donnell been more diligent with respect to ESI early in the discovery period, he likely would have received those documents well in advance of the deadline. Additionally, although O'Donnell complains that the court denied him the benefit of ESI discovery by failing to set a deadline for that production, Genzyme correctly points out that O'Donnell did not take the necessary corrective measures. He did not move to compel the more timely production of ESI, did not renew his Rule 56(d) motion when he filed his opposition to summary judgment without the benefit of ESI, and has not argued that Genzyme violated any procedural rules with the timing of its production after the court's order.

Concerning depositions, Genzyme informed O'Donnell in late October 2014 that it was holding December dates open for him to depose Genzyme personnel, stress-

---

**4.** The record shows that the district court assigned this case to the "standard track" under the Local Rules for the United States District Court for the Northern District of Ohio. Our review of the Local Rules shows that cases are assigned to one of five tracks, based on their nature and complexity. These tracks specify the total time within which a case must be resolved. However, the tracks do not appear to require a specific discovery period within that total time. Therefore, while this case's assignment to the standard track required that it be resolved within fifteen months, the ninety-day period for dispositive-motion discovery appears to have been a decision left solely to the discretion of the district court.

ing the need to schedule depositions quickly in order to comply with the relatively brief discovery period. Despite Genzyme's early and repeated requests for the identities of deponents, and O'Donnell's repeated promises to identify them, it appears that he never took meaningful steps to schedule additional depositions.

In light of the relatively short deadlines, O'Donnell's dilatory approach to ESI and deposition discovery weighs against his argument that he was denied adequate time for discovery.

### 5. Genzyme was not so unresponsive that O'Donnell was denied adequate time for discovery.

■ Genzyme made efforts early on to advance ESI discovery on a timeline that would meet the court's schedule. And after O'Donnell made his substantially increased ESI proposal on December 1, Genzyme informed O'Donnell within twenty-four hours that it considered his request overbroad, which should have prompted O'Donnell to seek court intervention once it became clear the parties could not agree. Although it appears Genzyme did not show a willingness to compromise significantly after O'Donnell submitted his proposal, the court ultimately adopted Genzyme's proposal, finding it to be more reasonable. Genzyme admits it did not produce ESI in time for O'Donnell to review it before opposing summary judgment. But the record does not reflect whether Genzyme could have produced ESI more quickly. According to Genzyme, the ordered scope of ESI required it to review nearly 100,000 documents. While this process was presumably expedited by the use of a computer system, it undoubtedly remained quite costly and time-consuming.

Genzyme also made early and repeated efforts to prompt O'Donnell to take depositions before the court's deadline. Although O'Donnell claims that Genzyme's many objections to his initial interrogatories and requests for production prevented him from knowing whom he should depose, the district court ultimately sustained the vast majority of those objections. Therefore, O'Donnell cannot blame Genzyme for his failure to timely identify deponents, when it was his overbroad discovery requests that caused the objections.

Although it is unclear whether Genzyme produced ESI as quickly as possible, its early efforts to advance ESI and deposition discovery on a schedule that would meet the court's deadline show it was not so unresponsive as to deny O'Donnell sufficient time for discovery.

Considered cumulatively, the factors discussed above show that O'Donnell had adequate time for discovery and that the district court did not abuse its discretion with respect to the challenged discovery rulings.

### D. Weighing Evidence and Credibility

O'Donnell makes one final argument, that the district court resolved a number of factual disputes and made credibility determinations against him. After examining the portions of the record cited by O'Donnell, we are convinced that the district court objectively considered the parties' arguments and appropriately viewed all evidence and drew all reasonable inferences in O'Donnell's favor. O'Donnell's arguments to the contrary are unpersuasive and do not merit further discussion.

### III. CONCLUSION

For the above reasons, we **AFFIRM** the judgment of the district court.