NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0063n.06

Case No. 24-1481

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Feb 04, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ASMAA JAMIL, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| MERCEDES-BENZ FINANCIAL | ) | MICHIGAN |
| SERVICES USA, LLC, | ) | OPINION |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: COLE, WHITE, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Asmaa Jamil worked for Mercedes-Benz Financial Services USA, LLC ("MBFS"). In 2018, she took an assignment in India, where she ran into trouble with her supervisor. Jamil was sent back home to Michigan and given a choice: find a new position or work out a severance agreement. Unable to find a new position with MBFS, Jamil entered into a severance agreement. By entering that agreement, she released numerous potential claims she may have had against MBFS, including discrimination claims. Still, Jamil sued MBFS. The district court ruled in MBFS's favor. On appeal, Jamil argues that: (1) the severance agreement is unenforceable, (2) she should have been given more time to conduct discovery, and (3) the district court should not have dismissed her claim for declaratory relief. We reject Jamil's arguments and affirm.

**I.**

Jamil began working for MBFS's predecessor in 1998. Over the years, Jamil climbed the corporate ladder, moving from collections, where she called customers to collect past due payments, up to management. From 2007 to 2011, she worked as a first-level manager, otherwise known as an L4. Then in 2011, she began a series of expatriate positions with other affiliated entities, eventually moving up to L3. These positions took her to Brazil, China, Singapore, and then in 2018 and 2019, to India. There, Jamil worked as head of credit risk management for DFS India and reported to Christina Schenck, DFS's director of regional credit operations for Africa/Asia/Pacific. While in India, Jamil accepted a position in Singapore set to start in March 2020.

But Jamil and her supervisors butted heads. Jamil did not want to fund certain Indian automobile dealerships, as she did not believe the dealers would repay any loans. Schenck disagreed—she was confident the dealers would pay them back and maintained that company policy required Jamil to approve the funding. Because Jamil refused to provide credit to these dealerships, in December 2019, Schenck decided to send her back to the United States effective May 2020. In the meantime, Schenck shifted Jamil's responsibilities to other executives. Around that same time, Schenck cancelled Jamil's upcoming position in Singapore, which Jamil attributed to the funding dispute and DFS moving the position to Germany. Schenck also informed Jamil that no L3 positions would be available upon her repatriation, but suggested that there may be an open L4 position or a possible separation package instead.

In early 2020, Jamil and Shawna McNamee, MBFS's director of human resources, started to discuss Jamil's return. McNamee told Jamil that there were no available L3 or L4 positions, but that she could help her find a position. In March 2020, MBFS advised Jamil that she could

either find a new position by August 31, 2020, or accept a severance agreement. But McNamee never helped Jamil find a new position, and Jamil believes this was because Schenck blocked her from attaining a new job.

So Jamil negotiated a severance agreement with MBFS. The agreement, which Jamil signed on July 11, 2020, allowed Jamil to remain on MBFS's payroll as an inactive employee until May 31, 2021, when she became eligible for retirement benefits. In exchange, Jamil agreed to release MBFS from "all claims, demands, actions, causes of action, suits, liabilities, interest, attorneys' fees, damages, or costs of any nature whatsoever, express or implied, that [she] may have, or have had," including "all claims under any employment practice law and civil rights acts (including but not limited to Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Family and Medical Leave Act, and the Americans with Disabilities Act, and any similar state laws)." R. 32-2, PageID 473.

Based on the circumstances surrounding her departure, Jamil sued MBFS alleging that it discriminated against her because of her race and age, and retaliated against her, in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Michigan Elliott-Larsen Civil Rights Act. She also brought breach-of-contract and declaratory-judgment claims against MBFS. Before discovery, MBFS moved for summary judgment on the discrimination and retaliations claims and moved to dismiss the breach-of-contract and declaratory-judgment claims. The district court denied MBFS's motion for summary judgment as premature, denied MBFS's motion to dismiss Jamil's declaratory-judgment claim, and granted MBFS's motion to dismiss Jamil's breach-of-contract claim.

Discovery commenced on July 12, 2023. The district court set a discovery deadline of January 5, 2024. Jamil sought to depose MBFS's corporate representative before any other

depositions took place, but MBFS objected. This dispute lasted several months, and only two depositions took place—MBFS's corporate representative on December 21, 2023, and Jamil on December 28. On December 20, 2023, Jamil noticed fourteen additional depositions. MBFS opposed Jamil's notices for several reasons, including the looming discovery deadline and the "major holiday period." R. 29-6. And so, Jamil moved to extend the discovery deadline and to compel the depositions.

After the discovery deadline, MBFS again moved for summary judgment. The district court granted MBFS's motion. It also denied Jamil's pending discovery motions as moot, and later denied her motion for reconsideration. Jamil timely appealed.

**II.**

**A.      Release of Discrimination Claims.**

Jamil argues that MBFS was not entitled to summary judgment because a reasonable jury could find that she did not knowingly and voluntarily release her employment-discrimination claims. We review a district court's grant of summary judgment de novo. *Puskas v. Delaware County*, 56 F.4th 1088, 1093 (6th Cir. 2023). Summary judgment is appropriate where "the movant shows that there is no genuine dispute [of] material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We have held that under some "circumstances employers and employees may negotiate a valid release of [discrimination] claims." *Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 617–18 (6th Cir. 2024) (quotation omitted). Federal common law dictates the validity of such a release. *McClellan v. Midwest Machining, Inc.*, 900 F.3d 297, 302–03 (6th Cir. 2018). So we "appl[y] ordinary contract principles" while "remaining alert to ensure that employers do not defeat the policies of [discrimination statutes] by taking advantage of their superior bargaining

position or by overreaching." *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995) (citation omitted). To determine whether a release was knowingly and voluntarily executed, we assess: "(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc) (quotation omitted). Under the last factor, we consider whether fraud, duress, or other breach-of-contract defenses render the severance agreement unenforceable. *Gascho v. Scheurer Hosp.*, 400 F. App'x 978, 982–83 (6th Cir. 2010). This inquiry has both objective and subjective components: "we ask whether a reasonable person (objective) would have understood that they were waiving their rights based on a number of factors particular to the employee at issue (subjective)." *Moore*, 113 F.4th at 621. We address each factor in turn.

### 1.    Jamil's experience, background, and education

"[T]here are no hard-and-fast rules for whose background and education suggests a knowing and voluntary waiver and whose does not." *Id.* at 620. This factor "principally considers how a person's experience would help or hinder them in understanding the contract at issue." *Id.* at 620–21. The background and experience needed thus varies based on how complex or simple the contract is. *Id.* at 621. The "clearer" the release language, "the less significant is any particular experience or background to finding knowing and voluntary waiver." *Id.* For instance, we have held that a high-school education is sufficient where the release is written in "understandable terms." *Tillman v. Macy's, Inc.*, 735 F.3d 453, 461 (6th Cir. 2013).

This factor weighs in MBFS's favor. Jamil earned a bachelor's degree, a master's degree in business administration, a master's degree in Near Eastern languages, and a post-graduate

certificate in management information systems. Further, she worked as a finance executive for more than ten years with MBFS, and had experience in 2018 and 2019 working with "legal" while in India. R. 34-4, PageID 641, 712. Jamil's education and experience significantly exceeds the education and experience of others who we have held knowingly and voluntarily waived their discrimination claims. *See, e.g.*, *Tillman*, 735 F.3d at 461; *Maxwell v. FCA US, LLC*, No. 22-3286, 2023 WL 2636586, at *2 (6th Cir. Mar. 21, 2023) (order); *Solomon v. CARite Corp. LLC*, 837 F. App'x 355, 362 (6th Cir. 2020); *Hank v. Great Lakes Constr. Co.*, 790 F. App'x 690, 699 (6th Cir. 2019); *Gascho*, 400 F. App'x at 981; *Sako v. Ohio Dep't of Admin. Servs.*, 278 F. App'x 514, 518 (6th Cir. 2008).

Nevertheless, Jamil argues that no evidence shows that her experience regularly involved handling severance agreements. But such evidence is not required. *See Soltis v. J.C. Penney Corp.*, 635 F. App'x 245, 250 (6th Cir. 2015) (rejecting argument that the first factor weighs in a plaintiff's favor if "she has not previously dealt with signing releases"). Instead, we ask if Jamil's experience and education would "help or hinder [her] in understanding the [agreement]." *Moore*, 113 F.4th at 620–21. Here, Jamil's impressive background rendered her more than capable of understanding the relatively short severance agreement. Indeed, Jamil admitted at her deposition that she "understood" the severance agreement because "it was very straightforward." R. 34-4, PageID 613; *see Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007) ("[Plaintiff] is an educated, managerial employee, who was capable of understanding the [agreement]."); *Morrison*, 317 F.3d at 668 ("The record shows that [the plaintiff] was a highly educated managerial employee who was capable of understanding the terms of the agreement.").

### 2.      Time to review the agreement and consult an attorney

This factor also weighs in MBFS's favor. MBFS gave Jamil four and a half months to consider the severance agreement, far exceeding time periods we have found sufficient to consider such agreements. *See, e.g.*, *Tillman*, 735 F.3d at 462 (two months); *Gascho*, 400 F. App'x at 982 (twenty-one days); *Adams*, 67 F.3d at 583 (five days). And during that time, Jamil could have consulted an attorney but chose not to because she "thought [the severance agreement] was very straightforward." R. 34-4, PageID 613; R. 32-2, PageID 474. As much as she now asserts that some terms were unclear, it was her "obligation to seek [counsel] before she signed if she felt she did not understand the [agreement]." *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 483 (6th Cir. 2014) (quoting *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 461 (6th Cir. 1986)).

### 3.      Clarity of the agreement

The severance agreement is clear. It unambiguously states that Jamil "knowingly and willingly releases and forever discharges [MBFS] . . . from any and all claims . . . under any federal, state or local law . . . including . . . Title VII [and the ADEA]." R. 32-2, PageID 473. When considering nearly identical language, we opined that "a law degree" was unnecessary "to grasp the import of these terms." *Gascho*, 400 F. App'x at 982. And so, this factor favors MBFS.

### 4.      Consideration for the agreement

In evaluating this factor, we consider whether the consideration an employee received was "unfair or otherwise a disproportionate exchange of value." *Id.* In exchange for signing the release and thus waiving her discrimination claims, Jamil received approximately $354,000 (eighteen months' salary). Although she raises arguments with respect to other factors, she does not attempt to argue that this consideration was disproportionate or unfair. This amount of consideration favors MBFS.

### 5.     Totality of the circumstances

This factor permits courts to analyze "other considerations" relevant to whether an employee's release of claims was knowing and voluntary. *Id.* These include, for instance, whether "fraud, duress, or mutual mistake surrounded the execution of the waiver." *Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir. 1989); *Gascho*, 400 F. App'x at 982 (similar).

Jamil asserts that she signed the severance agreement because of MBFS's fundamental misrepresentation of the basis for her separation.[1] Recall that Jamil's overseas assignment was cancelled early, in December 2019, and she was slated to return to the United States in May 2020. In March 2020, Jamil was informed of her two options upon return—find another position by August 31, 2020, or enter into a separation agreement. But McNamee informed Jamil that MBFS "was going through extreme financial difficulty" and, therefore, L3 and L4 positions "would not be available." R. 34-1, PageID 579; R. 34-4, PageID 670, 761–62. And yet, the record evidence indicates that MBFS hired several individuals into comparable positions around that time. Jamil argues that she signed the severance agreement only because MBFS caused her to believe that no L3 positions were available. If she had known of MBFS's misrepresentations, Jamil asserts, she would not have "engag[ed] in severance discussions in the first place." D. 16 at p.24.

The problem for Jamil is that she knew that MBFS was filling L3 positions before she signed the severance agreement. As early as December 2019, Schenck informed Jamil that there would be no available L3 positions. During a call in early 2020, McNamee told Jamil that there would be no available L3 or L4 positions. Jamil concluded that Schenck essentially "blocked" her from attaining a new position. R. 34-4, PageID 650. In May 2020—two months before she signed

---

[1] As part of the totality of the circumstances, Jamil also asks us to consider MBFS's alleged breach with respect to benefits owed to her under the separation agreement. But the district court dismissed her breach-of-contract claim, and she has not appealed that ruling.

the agreement—Jamil sent MBFS's human resources director an email in which she complained that she had been "informed that here are no L3s available and yet" other employees had recently "been giv[en] the opportunity to repatriate at L3 and I have not." R. 32-2, PageID 511. Indeed, she decided to sign the agreement precisely because she learned that another employee got a position she wanted, and so she "knew [she] would not get any positions." R. 34-4, PageID 676. In her own words, she signed the agreement not because she was under the false impression that MBFS lacked financial resources, but because she "knew they had no positions for [her]," based on the fact that MBFS had passed on her for several openings in the last few months. *Id.* at 614. She thus felt it was "time to separate." *Id.*

Simply put, while MBFS's human resources department may have overstated the company's financial difficulties, the record shows that Jamil signed the contract with her eyes wide open. Jamil knew there were no positions available for *her*, but that such positions were available to *others*. The key inquiry here is whether Jamil's release of claims was knowing and voluntary, and she voluntarily signed the agreement with full knowledge. The totality-of-the-circumstances factor favors MBFS.

\* \* \*

Based on our discussion of the five factors outlined in *Morrison*, 317 F.3d at 668, the undisputed facts show that Jamil knowingly and voluntarily waived her right to bring employment-discrimination claims against MBFS. Thus, the district court did not err in granting summary judgment to MBFS.

### B.    Denial of Jamil's discovery motions

Jamil contends that the district court erred when it denied her motion to extend the discovery deadline and her motion to compel discovery as moot.

We review a district court's discovery rulings for an abuse of discretion. *See Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014). In doing so, we usually consider the following factors: "(1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests." *Doe v. City of Memphis*, 928 F.3d 481, 491 (6th Cir. 2019) (quotation omitted). "The overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery." *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010). We now assess each factor.

### 1. When Jamil learned of the issue

"This factor primarily pertains to situations where there was something that prevented a party from learning about a subject of desired discovery until after some discovery had already been sought." *Doe*, 928 F.3d at 492–93. This factor does not apply. Therefore, it is neutral.

### 2. Whether the desired discovery would have changed the district court's ruling

This factor favors MBFS. The discovery Jamil sought would not have changed the district court's summary-judgment decision. Jamil sought discovery about the availability of L3 and L4 positions because she had been informed that those positions were unavailable. But Jamil was aware when she signed the severance agreement that MBFS had been filling L3 positions and was blocking her from such positions. Any new evidence about these facts would not undermine her knowledge of MBFS's supposed misrepresentations. And significantly, neither Jamil's Rule 56(d) affidavit nor her appellate briefing explain how additional discovery could have altered the district

court's ruling. *See Thornton v. Graphic Commc'ns Conf. of Int'l Bhd. of Teamsters Supplemental Ret. & Disability Fund*, 566 F.3d 597, 618 (6th Cir. 2009).

### 3.     Length of the discovery period

The parties had approximately six months to conduct discovery. We have held that similar periods weighed in neither party's favor. *See, e.g.*, *O'Donnell v. Genzyme Corp.*, 640 F. App'x 468, 475–76 (6th Cir. 2016) (four months); *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 625 (6th Cir. 2014) (five months). Thus, this factor is neutral.

### 4.     Whether Jamil was dilatory

Jamil lacked diligence in her discovery efforts. On August 11, 2023, Jamil provided her initial disclosures to MBFS, and in these disclosures, she named 37 individuals likely to have discoverable information. On December 20, two weeks before the discovery deadline, Jamil noticed and unilaterally scheduled depositions for fourteen of those individuals. Then on December 26, Jamil moved to extend the discovery deadline, and on January 5, 2024—the discovery deadline—she moved to compel the fourteen depositions.

Jamil listed the individuals she sought to depose in her initial disclosures, indicating that they had discoverable information—and yet, she waited more than four months to notice the deponents. This delay, as we have held before, is dilatory. *See, e.g.*, *Bentkowski v. Scene Mag.*, 637 F.3d 689, 696–97 (6th Cir. 2011) (four and a half months); *Audi AG v. D'Amato*, 469 F.3d 534, 541–42 (6th Cir. 2006) (two and a half months).

### 5.     Whether MBFS was responsive during discovery

This factor favors MBFS. "We analyze this factor in the context of whether the appellee missed any discovery deadlines, failed to turn over critical documents in response to a request for

production, or failed to respond to the appellant's initial discovery requests." *Dunlap v. Sevier County*, No. 20-6216, 2021 WL 3123914, at *5 (6th Cir. July 23, 2021). MBFS did not miss any discovery deadlines, fail to turn over critical documents, or fail to respond to Jamil's discovery requests.

\* \* \*

Because none of the pertinent factors supports Jamil, the district court did not abuse its discretion in denying Jamil's motions to extend the discovery deadline and to compel discovery.

## C.     Jamil's claim for declaratory relief

Because Jamil's substantive claims fail, her request for declaratory relief fails as a matter of law. *See Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 n.1 (6th Cir. 2023).

## III.

For these reasons, we **AFFIRM** the district court's judgment.